SAVELL v. SAVELL.

Apr. 7, 1952.

No. 38347 (58 So. (2d) 41)

Weir & Weir, for appellant.

Prisock & Prisock, for appellee.

Roberds, J.

Appellant was adjudged in contempt of court in this cause by the Chancery Court of Neshoba County because of his failure and refusal to contribute to the support and education of his three minor children as theretofore decreed by said court. He appeals.

He makes the points, First, that his former wife, and the mother of the children had no such interest as entitled her to have him cited for contempt; Second, that the proof is not sufficient to justify the court in finding him guilty of contempt; and, Third, that he was under no duty to contribute to the support and education of his children under the circumstances hereinafter disclosed.

The parties heretofore were formerly man and wife. A divorce was granted. They had three minor children. On November 19, 1945, a decree was entered by said chancery court awarding the custody of the children. On May 17, 1947, another decree was rendered modifying, to some extent, the former decree. It is not necessary to deal with those decrees. On November 25, 1947, another decree was granted by said court. This was by agreement of the parties and their solicitors. At that time June Savell was ten, Duncan Savell was seven, and James Savell was five years of age. That decree adjudged it to the best interest of the two boys that they be placed in Devereaux Hall and that June be placed in St. Mary's School for Girls, both institutions being Catholic Schools located at Natchez, Mississippi, and that at the end of the scholastic year the three children go to the home of Mr. and Mrs. Chap Duncan, the father and mother of Mrs. Savell, in Neshoba County for six weeks, and then be placed in the home of Mr. Savell, their father, for six weeks. The decree ordered Mr. Savell to pay $50 per month and Mrs. Savell to pay $10 per month for the support, maintenance and education of the three children while in said schools. The decree then recites ''*    *    *

the court hereby reserves the right to modify this decree in vacation or term time upon application of either party, and in all other matters pertaining to the above mentioned decree, shall remain in full force and effect * * *''.

Mrs. Savell filed a petition to have appellant adjudged in contempt of court in failing and refusing to place the two boys in Devereaux Hall, or deliver them to her so that she could do that. On January 16, 1948, said court entered a decree finding that Mr. Savell ''* * * had not defiantly refused to obey and comply * * *'' with the decree of November 25th in not placing the two children in that school, and did not adjudge him in contempt of court. The decrees expressly continued in force the November 25th decree and ordered Mr. Savell to deliver the two boys to Devereaux Hall within ten days. It recited that June Savell was already in St. Mary's. Mr. Savell appealed to this Court from that decree and his appeal was dismissed. Savell v. Savell, 206 Miss. 55, 39 So. (2d) 532.

On September 15, 1949, the same court entered another decree on the petition of Mrs. Savell to modify the former decree as to the custody of the children. The court found that the children had remained in school at Natchez under the November 25th agreed decree, and they had entered upon the school work for 1949-1950 session; that they had been well cared for; had been furnished ample wholesome food and proper clothing and were happy in their surroundings. All three of them were before the court and June and Duncan made statements to the chancellor. The court found that conditions affecting the rights of the father and mother to the custody of the children had not changed since the last decree except that Mrs. Savell had become a resident of New Orleans, Louisiana, and that the officers of Neshoba County had found ''50 gallons of moonshine whiskey in the barn and on the farm of V. W. Savell,'' the appellant. It further found that appellant had failed and refused to contribute anything to the support and schooling of the children; that as a

witness upon the stand at this hearing he had "openly declared that he had not paid the sums required by said decrees, and averred that he wilfully and obstinately intended not to pay such sums * * *'', and that he would not contribute anything to their schooling and support unless awarded their custody. The decree adjudicated that Mr. Savell had "forfeited his right to the custody, care and tuition of his said three children." It found that it was to the best interest and welfare of the children that they be kept in said school at Natchez, and ordered that they remain there, but provided that during school vacation they be placed in the home of Mr. and Mrs. Chap Duncan. It again ordered Mr. Savell to pay $50 per month and Mrs. Savell to pay $10 per month for the support, maintenance and education of the three children while in school, and that Mrs. Savell contribute $10 per month to their support while in the home of Mr. and Mrs. Duncan. It provided that both the father and mother might visit the children while in school. It enjoined both parties from carrying the children out of this State. The decree contains this recital: "These said children are now wards of this court, and are hereby retained as wards of the court and it specifically reserves and retains jurisdiction of them for decisions, either in term time or vacation, touching the custody and well-being of said children as may hereafter arise." There was no appeal from that decree.

In May 1951, Mrs. Savell filed the present petition to have Mr. Savell adjudicated in contempt of court for obstinate refusal to contribute anything whatever to the support, maintenance and education of the children. The chancellor, after a full hearing upon the merits, found that Mr. Savell had wilfully and obstinately refused to contribute to the support of his children; that he was able to do so; that he was in arrears in the sum of $1,750; that he had been requested and had wilfully refused to so contribute or comply with the decrees of the court, and that he was in contempt of the court "by his wilfull, obstinate

and contumacious failure to comply with the decrees of this court * * *'', and ordered that he be placed in jail until he purged himself of contempt by paying the said sum of $1,750.

Could Mrs. Savell institute this proceeding? Appellant cites no authority to support his contention she could not. It is true that ██ ██ as a general rule proceedings for contempt for enforce a civil remedy and to protect the rights of parties litigant should be instituted by the aggrieved party or someone who has a pecuniary interest in the right to be protected. 17 C. J. S., Contempt, Sec. 63, page 79, but ██ ██ we think Mrs. Savell has such an interest as that she can institute this proceeding. She has been a party to these proceedings throughout. She and appellant consented to the decree which appellant has violated. She, second to the husband, is responsible for the maintenance and support of their children. If appellant, the father, does not support them, the burden is that much greater upon her. The court has decreed the father should pay $50 and the mother $10 per month to their maintenance and support. If the father does not pay, the amount to be paid by the mother will likely be increased. She is aggrieved and also has a pecuniary interest in compelling appellant to pay. In addition, this is simply a proceeding to bring the matter before the court. We think she could do that.

██ ██ Appellant says the proof does not justify the action of the court in finding him guilty of contempt. He admits he has paid nothing. The defense seems to be that he was not able. Testimony was taken upon that question. The proof shows he owns 256 acres of land just outside of the west city limits of the City of Philadelphia, a home in which he and his present wife reside, a chicken hatchery, owns, or operates a baseball park, has a Studebaker 1950 model three-fourth ton truck, an International 1949 model three-fourth ton truck and a 1949 Dodge Station Wagon, and some other property. It is true that the chancery clerk testified he has two oustanding trust

deeds of record aggregating on their face some $19,000. However, the witness did not know whether these were bona fide debts, nor what had been paid upon them. One was to M. H. Savell, apparently a relative of appellant. Appellant did not testify. We cannot say the chancellor was not justified in finding that appellant could have made the payments to support his children.

Lastly, appellant seems to contend he was under no duty to pay the schools in which the minors were placed. He admits he is under duty to support, maintain and clothe the children, but, as we understand, he looks upon the present arrangement as purely school tuition. It is more than that. The children are being nourished, sheltered, and clothed, in addition to their training and schooling. And, according to the express finding of the chancellor, all of this is being done in a very splendid way. And, in this connection, appellant, in a vague sort of way, says he could place his children in the public schools of the State, which would be better than having them in the named institutions, and, further, that he cannot be required to pay those institutions. The decree for placing the children in said schools was agreed to by appellant, and, besides, the court expressly adjudicated the children to be wards of the court, as indeed they were without such adjudication, with right to change their custody as their best interest and welfare might later appear. Section 2743, Miss. Code 1942.

Affirmed.

**Alexander, Hall, Kyle** and **Holmes, JJ.**, concur.