UNITED STATES ex rel. SCHNEIDER v. ESPERDY, Acting District Director of the Immigration and Naturalization Service at the Port of New York.

UNITED STATES ex rel. JUDITZ v. DISTRICT DIRECTOR OF IMMIGRATION & NATURALIZATION AT PORT OF NEW YORK.

UNITED STATES ex rel. NUKK v. DISTRICT DIRECTOR OF IMMIGRATION & NATURALIZATION AT PORT OF NEW YORK et al.

UNITED STATES ex rel. SIMINOFF v. DISTRICT DIRECTOR OF IMMIGRATION & NATURALIZATION AT PORT OF NEW YORK.

United States District Court
S. D. New York.
Dec. 10, 1952.

Witt & Cammer, New York City, for Jack Schneider.

Blanch Freedman, New York City (Harry Sacher, New York City, of counsel), for Paul Juditz and Joseph Siminoff.

Ira Gollobin, New York City, for Michael Nukk.

Myles J. Lane, U. S. Atty., New York City (Nathan Skolnik and William J. Sexton, Asst. U. S. Attys., New York City, and Max Blau, Attorney, Immigration and Naturalization Service, New York City, of counsel), for respondent.

McGOHEY, District Judge.

These four petitioners are aliens presently held without bail in deportation proceedings. Prior to October 24, 1952, when they were taken and thus held, each of them had been at large on bail for a substantial period of time. They assert that the At-

torney General's decision to rearrest and hold them without bail was "arbitrary, capricious and unreasonable."

After argument, hearings were ordered. Petitioners objected to hearings on the ground that in each case it was clear from the petition, return and traverse that the Attorney General had acted arbitrarily. All except Schneider declined to offer testimony. He, without withdrawing or waiving his objections, called witnesses. He did not testify.

The Government rested on the returns and offered no testimony as to any petitioner.

The following facts are not in dispute.

Schneider first entered the United States in March, 1921, when he was admitted for permanent residence. He is a national of and was last a citizen of Russia. He is married to an American citizen, and they have a native-born daughter. Both are dependent on him for support and live with him in the City of New York. He holds responsible offices in an international and two local labor organizations. His petition for naturalization is still pending. When it was filed does not appear. The witnesses he called testified, in substance, that they had known him for various periods of years; that he was well regarded as a union official in the fur industry; that he had participated in war bond and community fund drives; that he had never attempted to spread or teach Communist doctrine to them or in their presence; that their contacts with him were limited to labor matters in the fur industry and were had mostly during business hours, although some were at union meetings held in the evenings. They professed ignorance of his activities or associations other than as thus related. These witnesses were either members of Schneider's union, fellow officers or representatives of employers who have contracts with the union. Their testimony added nothing of importance.

Schneider was first arrested on November 1, 1948 on a deportation warrant which charged that after his entry into the United States he had been a member of an organization which advocated the forceful overthrow of the Government of the United States and which published and circulated written or printed matter advocating and teaching such doctrine. This warrant authorized his release on $1,000 bail, which he posted. On October 25, 1950, after the passage of the Internal Security Act of 1950,[1] he was requested to appear at the office of the District Director of Immigration and Naturalization. He did and was informed that his bail was revoked, and he was again taken into custody and held without bail. Up to that time there had been no hearings to determine his deportability. He sought release by habeas corpus on October 30, 1950, and after argument Judge Ryan held that the Attorney General's action was arbitrary and an abuse of discretion. He sustained the writ and directed that Schneider be enlarged on bail of $1,000.[2] As soon as the decision was filed the parties stipulated that the petition be withdrawn on the agreement of the District Director of Immigration to release him on "administrative" bail of $1,000, which was done. Shortly thereafter the deportation hearings were commenced and continued from time to time until January 31, 1951. Testimony was received that Schneider had been a member of the Communist Party. He did not testify in his own behalf and declined to do so when called by the Government. At the close of the hearings he was permitted to file a statement under oath to the effect that on a prior occasion he had, while under oath, denied that he was or had been a member of the Communist Party. He refused to be cross-examined as to the statement. On July 20, 1951, the hearing officer found that he had been a member of the Communist Party of the United States from about 1929 or 1930 to 1936 or 1937, and recommended that he be deported. This recommendation was approved by order of the Acting Commissioner of Immigration on February 13, 1952. On October 22,

---

1. 64 Stat. 987.

2. U. S. ex rel. Klig v. Shaughnessy, D.C. S.D.N.Y., 94 F.Supp. 157.

1952, the Board of Immigration Appeals ordered that the Acting Commissioner's order "be withdrawn" and that the hearing be reopened to permit Schneider to have a subpoena issued to compel attendance of a witness from whom he expected to elicit testimony bearing on his alleged membership in the Communist Party.[3] On the very same day, the District Director notified Schneider's surety to surrender him on October 24. He did and Schneider, though he had been on bail for two years, was arrested for the third time and held without bail for the second time. While at large he complied with the terms of his bond.

Juditz is a native of Russia who entered the United States for permanent residence in March, 1909. He is a widower and has two native-born sons, one of whom served as a junior officer in the armed forces during the recent World War.

He was first arrested in February, 1951, on a deportation warrant which charged that he had become, after entry, a member of the Communist Party. He was held without bail. By habeas corpus he challenged the Attorney General's determination as arbitrary. After hearing argument, Judge Samuel H. Kaufman entered an order on March 9, 1951, sustaining the writ unless the Attorney General released the alien on bail in the sum of $5,000. He posted the bail and was released. Between September 27 and October 21, 1951, hearings were held in the deportation proceedings. Juditz did not testify for himself and declined to testify when called by the Government. The hearing officer found that, after entry, Juditz had been a member of the Communist Party—though during what period is not alleged in the return—and on November 26, 1951, recommended deportation. The finding and order were approved by the Acting Commissioner on February 27, 1952, and Juditz was ordered deported. His appeal to the Board of Immigration Appeals, which was heard on May 23, 1952, remains undetermined. He was at large on bail from March 9, 1951 until October 24, 1952, when for the second time he was taken into custody and held without bail under the same circumstances as Schneider. While he was at large on bail he complied with the terms of his bond.

Nukk is a native and last a citizen of Estonia who first entered the United States for permanent residence in March, 1939. He filed a petition for naturalization, but on what date does not appear. It is still pending. He is married to a citizen of the United States and has two native-born young children. He supports his family who live with him in an apartment house in New York City where he is employed as superintendent.

He was first arrested on a deportation warrant in May, 1951, charging him with being unlawfully in the United States because after entry he had become a member of the Communist Party. The Attorney General authorized his release on $5,000 bail, which was posted. After a hearing in July, 1951, it was found that, after entry, he had been a member of the Communist Party, but during what period the return does not allege. Nukk did not testify on his own behalf and declined to testify when called as a witness for the Government. The hearing officer recommended deportation. This recommendation was approved in November, 1951, by the Acting Commissioner of Immigration. An appeal to the Board of Immigration Appeals was argued in March, 1952, and at present remains undetermined. He had been at large on bail for almost a year and a half when on October 24, 1952, he was arrested and held without bail under the same circumstances as Schneider. While on bail he complied with the terms of his bond.

Siminoff, a native and last a citizen of Russia, first entered the United States for permanent residence in May, 1906, at the age of seven years and has since resided here continuously. He is married to a native-born American wife and has three native-born sons who served in the armed forces of the United States in the recent World War. His petition for naturalization filed in 1943 is still pending.

He was first arrested on a deportation warrant in October, 1951, charging that,

3. So far as appears, no further hearings have been held.

after entry, he had become a member of the Communist Party. The Attorney General authorized his release on $5,000 bail, which was posted. Deportation hearings were held in January and February, 1952. Siminoff did not testify. No findings or decision had been made as to his deportability on October 24, 1952, when he was arrested and held without bail under the same circumstances as Schneider. Two days later, on October 26, 1952, the hearing officer found that, after entry, he had been a member of the Communist Party—but during what period the return does not allege—and recommended deportation. While at large he complied with the terms of his bond.

■ Congress in enacting the Internal Security Act imposed a heavy responsibility on the Attorney General and, in order to discharge it, he was given great discretion which can only be overridden when it is clearly shown that it " 'was without a reasonable foundation.' " [4] The question here then is whether the facts before the respondent rationally support the inference that these relators if permitted to remain at large on bail "would so conduct [themselves] in aid of the objectives of the world communist movement as to constitute a menace to public interest." [5] According to the returns, the foundation on which the inference rests as to each petitioner is substantially as follows: [6]

"10. On March 10, 1952, the United States Supreme Court decided the case of Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, wherein it held that 'when in the judgment of the Attorney General an alien Communist may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement, that alien may be detained.'

"11. After the decision in Carlson v. Landon, supra, the records and files of the Immigration and Naturalization Service relating to this relator were examined, and upon the basis of information contained therein concerning his membership in the Communist Party and his activity in supporting that party's doctrines, it was concluded that there was a reasonable basis for anticipating that he would so conduct himself in aid of the objectives of the world communist movement as to constitute a menace to public interest if permitted to be at large.

"12. This relator, who was a member of the Communist Party, when called as a Government witness in his deportation proceeding, declined to take the stand, declined to testify, and declined to answer questions although upon the conclusion of the hearing he made a sworn statement that he had previously stated under oath that he was not and had never been a Communist. He refused, however, to submit to cross-examination regarding that statement.

"13. The administration officials charged with the weighty responsibility of safeguarding the security of the United States have inferred from the refusal of the relator to testify in his own defense or to make an unequivocally sworn statement disclaiming membership in the Communist Party, that he would so conduct himself if enlarged as to further the objectives of the world communist movement."

■ It thus appears that the decision to deny bail was based on (a) membership in the Communist Party at some period either several years ago or not stated at all; [7] (b) failure to testify and to deny such membership at the hearings; and (c) "infor-

---

4. Carlson v. Landon, 342 U.S. 524, 541, 72 S.Ct. 525, 534.

5. This is the language of the returns.

6. These paragraphs are taken from the return to Schneider's petition. Similar allegations are made in the other returns.

7. Schneider's deportation hearing was reopened for further testimony on Party membership. See p. 6, supra.

644

mation contained [in the records and files of the Immigration and Naturalization Service] concerning his membership in the Communist Party and his activity in supporting that party's doctrines." What that "information" is has not been disclosed to the Court. Neither has there been disclosed the nature or extent of the petitioner's alleged "activity in supporting that party's doctrine." On the other hand, it is clear that each relator was permitted to be at large for a substantial period after the date when the testimony as to his Party membership was received and he failed to testify at the hearings. In Schneider's case the period was about two years. In Juditz' case it was one year. In Nukk's case it was a year and three months. In Siminoff's case it was seven months. If proof of Party membership during some past or unspecified period plus failure to testify really makes any of the petitioners a present menace, it would be only reasonable to expect that just as soon as those facts were established the petitioners would have been taken into custody. But that was not done. And there is neither proof nor allegation that during the intervening periods the petitioners engaged in any "activity in supporting [the] party's doctrine." I conclude, therefore, that the facts disclosed to me as those on which the respondent's decision is said to rest do not rationally support it, and hold accordingly that it was an abuse of discretion to rearrest the petitioners and hold them without bail.

The decision in the Carlson case is not to the contrary. The facts from which it was there inferred that Carlson and the others should be held without bail were vastly different from the facts in the instant cases. There the proof showed not only the party membership of the petitioners at the time of their detention and for a long period before but, in addition, their "personal activity in supporting and extending the Party's philosophy concerning violence." This, said the Court, gave "adequate ground for detention."[8] There is a complete absence of any such proof here.

·[3] Accordingly, the writs will be sustained unless the relators are within twenty-four hours released on bail in the amounts on which prior to October 24, 1952, they were respectively at large.

Submit order.

8. 342 U.S. at page 541, 72 S.Ct. at page 535.