Harold DIMMICK and Rachel Dimmick,
Petitioners,

v.

A. WATTS et al., Respondents.

No. 1392.

Supreme Court of Alaska.

Oct. 26, 1971.

Alan G. Sherry, Alaska Legal Services
Corp., Anchorage, for petitioners.

Murphy L. Clark and Catherine S.
Krendl, Hughes, Thorsness, Lowe, Gantz
& Clark, Anchorage, for respondents.

484

Before BONEY, C. J., and DIMOND, RABINOWITZ, and CONNOR, JJ.

OPINION

RABINOWITZ, Justice.

In 1964, the Congress of the United States of America found that despite the general economic well-being and prosperity of our nation, "poverty continues to be the lot of a substantinal number of our people."[1] In light of this finding, Congress declared that it was the policy of the United States of America

to eliminate the paradox of poverty in the midst of plenty in this Nation by opening to everyone the opportunity for education and training, the opportunity to work, and the opportunity to live in decency and dignity.[2]

By way of implementation of this declaration of policy, Congress enacted the Economic Opportunity Act of 1964. As part of this rather broad legislative attack on the problems of poverty, Congress provided that the Office of Economic Opportunity was to develop, carry on, and fund a legal services program

to further the cause of justice among persons living in poverty by mobilizing the assistance of lawyers and legal institutions and by providing legal advice, legal representation, legal counseling, education in legal matters, and other appropriate legal services. Projects involving legal advice and representation shall be carried on in a way that assures maintenance of a lawyer-client relationship consistent with the best standards of the legal profession.[3]

As a result of this legislation, Alaska Legal Services Corporation was incorporated as a non-profit corporation under the laws of the State of Alaska.

Sometime in February of 1969, petitioner Harold Dimmick "was offered a credit card" by respondent Standard Oil Company. By August of that year, Dimmick was some $500 in arrears in connection with charges he had incurred through use of his Standard Oil credit card. Congress' 1964 legislation providing for the development of legal services programs and Dimmick's use of his Standard Oil credit card have come to play significant roles in this review proceeding.

In their complaint in the trial court petitioners Harold and Rachel Dimmick sought both compensatory and punitive damages against respondents O'Neill Investigations and Standard Oil. The basis of petitioners' action against R. Michael O'Neill and his employees was that in the course of collecting the debt Harold Dimmick owed to Standard Oil, O'Neill and his employees engaged in a continual pattern of harassment, wrongful invasion of privacy, wrongful interference with an employment relationship, extortion, slander, and improper practice of the law as defined by the Alaska Bar Association. The Dimmicks grounded their cause of action against Standard Oil Company on the dual theories of vicarious liability and negligence in that Standard knew, or should have known, that O'Neill followed a pattern and practice of using tortious collection methods.

In an introductory paragraph in their complaint, the Dimmicks asserted that they

are clients of an attorney employed by Alaska Legal Services Corporation. As such, they are exempt from filing fees otherwise required by the State Court System, pursuant to Rule 13 of Rules Governing the Administration of All Courts.

In its answer Standard Oil denied that the Dimmicks were exempt from payment of filing fees, affirmatively asserted that O'Neill and his employees were independent contractors in regard to the collection of the Dimmick debt, and cross-claimed against O'Neill under his employment agreement with Standard, pursuant to which O'Neill agreed to indemnify and

1. 42 U.S.C. § 2701.

2. Id.

3. 42 U.S.C. § 2809(a) (3).

save harmless Standard. Prior to filing a responsive pleading to the Dimmicks' complaint, O'Neill filed an ex parte motion for order to show cause and to dismiss. The motion requested that Dimmicks be made to show cause why they "are unable to employ counsel in this fee generating case."[4] Superior Court Judge Ralph E. Moody, on the same day the ex parte motion was filed, entered an order requiring the Dimmicks to show cause

(1) that this action is within the scope of the authority of Alaska Legal Services Corporation, (2) that [they] * * * are indigent and therefore unable to employ counsel on a hourly fee basis or on a contingent fee basis * * *.

The Dimmicks then moved to have the ex parte show cause order quashed and set aside. In support of the motion it was asserted that the ex parte order to show cause was issued in excess of the trial court's power because of the absence of any exceptional circumstances, or supporting affidavits warranting the shortening of time usually required for notice of motion. The Dimmicks also relied on rule 13, Rules Governing the Administration of All Courts, which then provided:

The state, or any office or agency thereof, or a person represented by an attorney furnished to him by an organization authorized to provide legal services to indigents, shall be exempt from the payment of any filing fee in any court of the state.

This rule shall not be construed to restrict the power of a court to allow an indigent party to proceed in forma pauperis in a proper case.

Since rule 13 expressly distinguished the waiver of filing fees for Alaska Legal Services' clients from situations of traditional in forma pauperis proceedings, the Dimmicks contend it is evident that this court, in promulgating the rule, did not intend to require a client of legal services to undergo the additional procedures for proceeding in forma pauperis. It was further argued that if rule 13 were construed to permit the superior court to require the fulfullment of in forma pauperis prerequisites, and thereby to review Alaska Legal Services Corporation determinations of client eligibility, it would render the filing fee waiver nugatory and superfluous. In opposition, O'Neill in part argued that the superior court has inherent power to determine if attorneys are qualified and authorized to represent a given client, that he had standing to make this challenge, and that his right to equal protection of the law was being denied by Alaska Legal Services Corporation through their administration of the Economic Opportunity Act of 1964. In response, the Dimmicks argued that attorneys employed by the Alaska Legal Services Corporation are members of the Alaska Bar, and fully competent to practice law, just as any other licensed attorney.[5] As to O'Neill's contention that representation of the Dimmicks by Alaska Legal Services Corporation was *ultra vires* of its corporate power, the Dimmicks contend that such matters are "clearly irrelevant" to the merits of the case. Superior Court Judge C. J. Occhipinti rejected the

---

4. Respondent O'Neill filed a memorandum of law in support of the motion. In this memorandum, it was stated that:

Not only are the [Dimmicks] * * gainfully employed so that they do not fit within the scope of litigation that Alaska Legal Services Corporation is authorized to practice in, but their claim is such that it is a fee generating claim which should be brought by an attorney in the employment of the [Dimmicks] * * * either on an hourly basis or on a contingent fee basis.

Accordingly, defendant R. Michael O'Neill * * * requests that this Court * * * require Alaska Legal Services Corporation and the [Dimmicks] * * * to show cause why they should not be required to retain admitted counsel on a fee basis.

5. The Dimmicks rhetorically asked whether O'Neill contends that the superior court could inquire into the terms of O'Neill's attorney's employment or partnership within his own firm on the motion of an opposing party in a pending case.

Dimmicks' contentions and refused to quash the order to show cause on the basis that the superior court has inherent power to determine whether attorneys have circumvented rules promulgated by the supreme court. Judge Occhipinti reasoned in part that to construe rule 13, Rules Governing the Administration of All Courts, as waiving filing fees for all persons, regardless of their means, simply because they are represented by Alaska Legal Services Corporation, would be an unconstitutional application of rule 13 and a denial of equal protection. The Dimmicks then petitioned this court to review the superior court's order denying their motion to quash the order to show cause.

■ We must first decide whether this case presents an appropriate instance for the exercise of our discretionary power to review interlocutory orders. In State v. Browder [6] in regard to our discretionary review jurisdiction, we said that

> it is established that the parties do not have a right to review, rather the grant to review lies within this court's sound discretion. City of Fairbanks v. Schaible, 352 P.2d 129 (Alaska 1960). In order to obtain review, the party must satisfy both Supreme Court Rules 23 and 24. Levi v. Sexton, 439 P.2d 423, 426 (Alaska 1968); State v. Hillstrand, 352 P.2d 633, 634 (Alaska 1960).

We hold that requirements of Supreme Court Rule 23(e) have been met here.

This rule provides that an aggrieved party may petition this court for review of any order or decision of the superior court not otherwise appealable

> [w]here postponement of review until appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.

The Dimmicks, if required to comply with the show cause order, will be put to the hardship of revealing their poverty and why their case is not fee generating before the merits will be heard. Since a $7,000 tort case would ordinarily be taken on a contingency fee basis, this may involve a showing that several attorneys refused to handle the case because it was too weak.[7] We also think all three subdivisions of Supreme Court Rule 24 are applicable here.[8] Therefore, since Supreme Court Rules 23 and 24 have been satisfied, we hold that review should be granted in this case.[9]

On the merits the paramount issue presented by this petition is whether the superior court is empowered to require that clients of Alaska Legal Services Corporation prove that their causes of action are within the scope of Legal Services' authority, and that they are indigent or unable to retain an attorney on an hourly or contingent fee basis. We have concluded that the superior court erred in denying the

6. 486 P.2d 925, 931 (Alaska 1971).

7. The record reflects that O'Neill's motion for stay of all proceedings in the case pending a decision on the qualifications of Alaska Legal Services Corporation to represent the Dimmicks was granted by the superior court.

8. Supreme Ct.R. 24 reads:
   A review shall not be a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; (2) where the sound policy behind the general rule of requiring appeals to be taken only from

final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; or (3) where the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review.

9. Supreme Ct.R. 25 provides in part:
   The use of a petition for review shall be considered as affording a supplementary and not extraordinary remedy, and may be utilized in aid of this court's appellate jurisdiction.

Dimmicks' motion to quash the order to show cause. Our holding is reached in light of the purpose of rule 13, Rules Governing the Administration of All Courts, and its differentiation from all other in forma pauperis procedures.

Rule 11, Rules Governing the Administration of All Courts, provides that the superior court clerk shall file an action upon payment of the filing fee set by Supreme Court Order 59. Order 59 prescribes a filing fee of $30 for a civil action of the type the Dimmicks initiated in the case at bar. Rule 13, Rules Governing the Administration of All Courts, in turn provides for an exemption from the payment of any filing fee in any court of the state for any person "represented by an attorney furnished to him by an organization authorized to provide legal services to indigents." Rule 13 further stipulates it shall not be construed to restrict a court's power to "allow an indigent party to proceed in forma pauperis in a proper case."

Alaska Legal Services Corporation traces its origin to the Economic Opportunity Act of 1964 under which the Office of Economic Opportunity was authorized to develop, carry on and fund a legal services program "to further the cause of justice among persons living in poverty. * * " [10] Such program must "be carried on in a way that assures maintenance of a lawyer-client relationship consistent with the best standards of the legal profession." [11] Resolution 104 of the Board of Trustees of Alaska Legal Services Corporation declares that it is not the purpose of the corporation "to perform any work which would be adequately handled by the private bar * *." Under its resolutions, client eligibility is to be established at the first interview if possible, and

> [a]ll cases which by their nature would generate a fee (such as personal injury) must be referred. If rejected twice by private attorneys, such cases will be eligi-

ble if in conformity with the other rules of eligibility.

The Amended Articles of Incorporation of Alaska Legal Services Corporation state that

> [a]ssistance shall not be extended to any person who is financially able to pay for such services under eligibility standards established by this corporation and in conformity with the guidelines of the Federal Office of Economic Opportunity.

Eligibility determinations by Legal Services attorneys are supervised and reviewed by the Alaska Legal Services Corporation Board of Trustees. The Office of Economic Opportunity guidelines provide that

> [p]rograms should not provide free legal advice in fee-generating cases, such as contingent fee cases or other cases in which a fee provided by statute or administrative rule is sufficient to retain an attorney. The test should be whether the client can obtain representation. When a case generates a fee sufficient to employ competent private counsel, the client should be referred under an appropriate lawyer referral system. If the fee is not sufficient to attract a private lawyer, the client may be eligible for the assistance of the OEO-funded program.[12]

In other cases, the eligibility standards must not be high enough to include clients who could pay a lawyer's fee and remain able to buy decent food, clothing and shelter, and OEO will not fund programs providing free legal assistance for individuals who can afford to employ private counsel.[13]

■ As previously mentioned, rule 13, Rules Governing the Administration of All Courts, in essence, provides that if Alaska Legal Services is "an organization authorized to provide legal services to indigents," then persons represented by lawyers furnished by Alaska Legal Services Corporation are exempt from payment of filing fees in any of Alaska's courts. Review

10. 42 U.S.C. § 2809(a) (3).

11. *Id.*

12. 1 Poverty L.Rep. § 6700.35 (1968).

13. *Id.*

of the guidelines and provisions of the Economic Opportunity Act of 1964 under which Alaska Legal Services Corporation is organized and Legal Services' Amended Articles of Incorporation and Board of Trustees Resolution 104 demonstrates that Alaska Legal Services Corporation is both authorized and limited to the provision of legal services to indigents. Therefore, under the terms of rule 13, Rules Governing the Administration of All Courts, persons represented by Alaska Legal Services Corporation lawyers are exempt from payment of filing fees.

■ This construction is consistent with our intent in promulgating rule 13, Rules Governing the Administration of All Courts. This rule was formulated in response to a request from the Executive Director of Alaska Legal Services Corporation. The plain meaning of rule 13 makes explicit that in forma pauperis procedures would not be required for clients of Alaska Legal Services Corporation and for other persons represented by counsel furnished by organizations of similar character. Rule 13 drew a sharp distinction between procedures for a rule 13 exemption and the comprehensive in forma pauperis procedures under which an indigent could be provided with court appointed counsel, would be entitled to waiver of all fees and bonds, printing and transcribing costs, and other benefits.[14] In regard to its applica-

bility to this case, the critical focus of the filing fee waiver provisions found in rule 13 is whether the organization is authorized to provide legal services to indigents. Here there is no question that Alaska Legal Services Corporation is within the intendment of the rule. We therefore conclude that the order to show cause in the case at bar was erroneously issued and should be vacated.[15]

■ We think the order to show cause should be vacated on the additional ground that under our Rules of Civil Procedure orders to show cause are generally prohibited with the exception of habeas corpus[16] and contempt[17] proceedings. Where there has been an appearance in the case, as the Dimmicks had made by virtue of Legal Services' filing the complaint, under our Rules of Civil Procedure a movant must serve with his motion a notice of hearing,[18] unless the motion may be heard ex parte.[19] Unless the motion may be heard ex parte, it must be served at least 10 days before the noticed hearing date.[20] An order for an earlier hearing may be issued ex parte but only on a showing of cause by the movant.[21] In this case, O'Neill did not demonstrate cause why an ex parte order for an early hearing should issue, did not serve with his motion a notice of hearing, and the order to show cause did not allow the Dimmicks the normal 10-day period for opposition.

14. *Compare* Supreme Ct.R. 43, Crim.R. 39 and Children's R. 15, all of which establish in forma pauperis procedures.

15. Subsequent to the holding of oral argument in this case, Rule 13, Rules Governing the Administration of All Courts was amended by order of this court. Rule 13 as amended now provides as follows:
    (a) The state, or any office or agency thereof, shall be exempt from payment of any filing fees in any court of the state. Other persons may be granted an exemption by the court as provided in subdivision (b) of this Rule.
    (b) A person represented by an attorney furnished to him by an organization authorized to provide legal services to indigents, or any other person who requests an exemption of filing fees, must

first file an indigency statement on a form prescribed by the Administrative Director of Courts. In the case of a person represented by an attorney furnished to him by an organization authorized to provide legal service to indigents, that organization shall also file, when appropriate, attorney rejection letters with the Court.

16. Civ.R. 86(c) (1) [b].

17. Civ.R. 90(b).

18. Civ.Form 21 illustrates a permissible notice.

19. Civ.R. 7(b) (3), 77(a).

20. Civ.R. 6(d).

21. *Id.*

■ The Federal Rules of Civil Procedure on motions are materially similar to Alaska's Rules of Civil Procedure. Commentators state that orders to show cause are not provided for under the federal rules because the draftsmen apparently did not think that the historical and technical procedures surrounding their use were consistent with the philosophy underlying the federal rules. Professors Wright and Miller believe that the effect of a show cause order can be secured by seeking an order under rule 6(d) shortening the time allowed on a motion, thereby obtaining the desired expeditious handling of the matter, yet avoiding all of the outdated procedures that have traditionally accompanied the show cause order.[22] Professor Moore takes the position that a motion should be used in preference to an order to show cause.[23] Rosenberg v. Hanno & Co.,[24] United States v. Rollnick,[25] Walling v. Moore Milling Co.,[26] and Judge Clark's concurring opinion in Application of Tracy[27] take the view that orders to show cause are neither desirable nor proper under the federal rules. We adopt a similar position and hold that orders to show cause are barred under our rules of civil procedure where not provided for in the rules.[28]

Even if O'Neill's order to show cause were to be treated as an ex parte application for an order shortening the time for hearing on his motion to dismiss,[29] we would still conclude that the court erred in granting the motion. O'Neill did not make any showing as to why the normal 10-day period for opposition should be shortened on an ex parte application.[30] Thus, in regard to our discretionary review jurisdiction, we think that employment of the procedural device of an ex parte order to show cause in this case justifies our treating the matter as a case "where the superior court has so far departed from the accepted and usual course of judicial proceedings * * * as to call for this court's power of supervision and review."[31]

In view of the manner in which the issues have been briefed and the bases of our disposition of the petition for review, we leave for a more appropriate occasion resolution of such difficult questions as to who has standing to challenge the provision by Alaska Legal Services Corporation of legal services to a particular client; who has standing to challenge an alleged *ultra vires* act of a non-profit corporation such as Alaska Legal Services Corporation; and whether the courts of Alaska have the inherent power to inquire as to the authority of an attorney employed by Alaska Legal Services Corporation to represent a given client.

The case is remanded with directions to enter an order quashing and setting aside the ex parte order to show cause.

ERWIN, J., not participating.

22. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1195 (1969).

23. 2A J. Moore, Federal Practice ¶ 7.05 (1968).

24. 26 F.Supp. 160, 161 (E.D.Pa.1938).

25. 33 F.Supp. 863, 865–866 (W.D.Pa.1940).

26. 62 F.Supp. 378, 381–382 (W.D.Va. 1945).

27. 106 F.2d 96, 98 (2d Cir.), cert. denied, 308 U.S. 597, 60 S.Ct. 129, 84 L.Ed. 500 (1939).

28. Apparently the main function of orders to show cause is to shorten time. In our view, Civ.R. 6(d) provides a more comprehensive procedure for achieving this end.

29. Civ.R. 6(d).

30. *Id.*

31. Supreme Ct.R. 24(3).