**PUBLIC DEFENDER AGENCY and State of Alaska, Department of Law, Appellants,**

v.

**SUPERIOR COURT, THIRD JUDICIAL DISTRICT, Appellee.**

No. 2071.

Supreme Court of Alaska.

April 9, 1975.

Lawrence J. Kulik, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant—Public Defender Agency.

Gerald W. Markham, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellant State.

Duncan Campbell Webb, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

CONNOR, Justice.

This case presents questions about the manner in which civil child support orders should be enforced. In particular, this case involves a determination of who should prosecute and defend in such proceedings.

The facts which give rise to the present controversy are as follows:

Upon divorce in 1968, Agnes Johnson was awarded custody of the six children of her marrigage to John Johnson. Mr. Johnson was ordered to pay monthly child support of $125 plus a 3% collection charge through the court trustee. Because of substantial arrearage, the court trustee moved on January 3 or 4, 1973, for an order to show cause to issue against Mr. Johnson. Superior Court Judge Singleton held a pretrial conference on the matter with a representative of the Department of Law and with Herbert Soll, the Public Defender. They discussed the possibility of the Department of Law prosecuting the action and the Public Defender Agency defending it. Judge Singleton then directed the two agencies to submit briefs on the legal and practical problems involved in such an arrangement. He also directed the court trustee to submit a brief on the factual issues and on the position of the court trustee with regard to the prosecution of contempt proceedings for non-support. After consideration of the materials submitted, Judge Singleton ordered the Public Defender, over objection, to represent Mr. Johnson and the Attorney General's office, again over objection, to prosecute. The parties seek review of this order.[1]

The issues presented for review are:

1. May the superior court order the Attorney General to prosecute a civil contempt for nonsupport proceeding?

2. Is the court trustee the proper party to prosecute such a proceeding?

3. Can the Alaska Public Defender, consistent with the Alaska Public Defender Act, be ordered to defend an alleged contemnor in a civil non-support action?

*The Attorney General*

Before the validity of the order to prosecute can be considered, it is first necessary to determine whether the Attorney General's office has any authority to proceed in the area of enforcement of support orders.

---

1. Judge Singleton found that issues regarding representation were separate and distinct from the problems facing Mr. Johnson, and that his order on the matter was final. Without determining whether this order was final within the meaning of Alaska Civ.R. 54(b), we find that this appeal meets the requirements of a petition for review set forth in App.R. 24(a).

■ The type of contempt involved here has traditionally been considered as falling on the civil side of the court, although we have recognized that it may have certain criminal overtones. Otton v. Zaborac, 525 P.2d 537 (Alaska 1974); Johansen v. State, 491 P.2d 759 (Alaska 1971). Civil contempts are designed

" 'to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made for enforcing the rights and administering the remedies to which the court has found them to be entitled. . . . [They] are civil, remedial and coercive in their nature, and the parties chiefly in interest as to their conduct and prosecution are the individuals whose private rights and remedies they were instituted to enforce'." United States ex rel. Noyes v. Wood, 6 Alaska 255 (1920).

Such civil contempt proceedings can normally only be initiated by the aggrieved party or by one who has an interest in the right to be protected. In re Paleais, 296 F. 403, 407 (2d Cir. 1924); "Civil and Criminal Contempt in the Federal Courts", 17 F.R.D. 167, 172 (1955). The interest necessary has often been characterized as "primary" or "pecuniary." MacNeil v. United States, 236 F.2d 149, 153 (1st Cir. 1956) cert. denied, 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119 (1956); Williams v. Iberville Parish School Board, 273 F.Supp. 542, 545 (E.D.La.1967); Savell v. Savell, 213 Miss. 869, 58 So.2d 41, 43 (1952).

The relevant duties of the Attorney General are found in AS 44.23.020:

"(b) The attorney general shall . . .

(2) represent the state in all civil actions in which the state is a party;

(3) prosecute all cases involving violation of state law, and file informations and prosecute all offenses against the revenue laws and other state laws where there is no other provision for their prosecution;"

■ In light of the substantial state interest in the enforcement of child support orders, we find that contempt of such an order is a violation of state law within the meaning of AS 44.23.020(b)(3). Traditionally, the states have been legitimately concerned with the area of family law, and, under the doctrine of *parens patriae*,[2] in particular, in the promotion of the welfare of children dwelling within their boundaries. This interest is prompted, at least in part, by the fact that the state is viewed as the ultimate source of a child's support in the event his parents should fail him. Johansen v. State, *supra,* at 765.

Alaska has manifested this interest by making wilful non-support a misdemeanor, AS 11.35.010, AS 11.35.090; by providing for support of a minor when he is removed from the home, AS 47.25.310 et seq.; by participation in a state-federal program to aid dependent children, AS 47.-25.310 et seq.; and through its participation under the Uniform Reciprocal Enforcement of Support Act, AS 25.25.010 et seq. It has also set up a program whereby the court trustee monitors payments under support orders, and takes steps preliminary to formal contempt proceedings to encourage payment of any arrearage. AS 09.55.-210; Alaska Civ.R. 67. The interest of the state is adequate to support the authority of the Attorney General to proceed under AS 44.23.020.[3]

2. The doctrine of parens patriae refers to the inherent power and authority of the state to provide protection of the person and property of a person non sui juris. Warner Bros. Pictures v. Brodel, 179 P.2d 57, 64 (Cal.App.1947). Under the doctrine the state has the sovereign power of guardianship over infants. Helton v. Crawley, 241 Iowa 296, 41 N.W.2d 60, 70–71 (1950). The right of the state to exercise guardianship over a child does not depend on a statute asserting that

power. The state's protective power depends upon the presence of the infant within its territorial limits, and not upon the place of his domicil or his ownership of property within the state. Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 625 (1925); 42 Am.Jur.2d Infants § 14 (1969).

3. From materials submitted to the trial court, it is apparent that, as a practical matter, the Attorney General's office has neither the bud-

The authority to proceed under AS 44.23.020 does not, however, empower the court to order the Attorney General to prosecute any particular contempt for non-support. Generally, an attorney general has those powers which existed at common law except where they are limited by statute or conferred upon some other state official. Pierce v. Superior Court, 1 Cal.2d 759, 37 P.2d 460 (1934); Van Riper v. Jenkins, 140 N.J.Eq. 99, 45 A.2d 844 (1946); People v. Debt Reducers, Inc., 5 Or.App. 322, 484 P.2d 869 (1971). AS 44.23.020 indicates that the office of the Attorney General is to function with those powers and duties normally ascribed to it at common law:

"(b) The attorney general shall . . .

(7) perform all other duties required by law or which usually pertain to the office of the attorney general in a state."

Under the common law, an attorney general is empowered to bring any action which he thinks necessary to protect the public interest, and he possesses the corollary power to make any disposition of the state's litigation which he thinks best. State v. Finch, 128 Kan. 665, 280 P. 910 (1929). This discretionary control over the legal business of the state, both civil and criminal, includes the initiation, prosecution and disposition of cases. United States v. San Jacinto Tin Co., 125 U.S. 273, 279, 8 S.Ct. 850, 31 L.Ed. 747 (1888); Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 174, 47 S.Ct. 553, 71, L.Ed. 978 (1927); Smith v. United States, 375 F.2d 243, 246–47 (5th Cir. 1967); United States v. Cox, 342 F.2d 167 (5th Cir. 1965); Boyne v. Ryan, 100 Cal. 265, 34 P. 707 (1893); Ames v. Attorney General, 332 Mass. 246, 124 N.E.2d 511 (1955).

When an act is committed to executive discretion, the exercise of that discretion within constitutional bounds is not subject to the control or review of the courts. To interfere with that discretion would be a violation of the doctrine of separation of powers. Although the Alaska Constitution does not expressly address itself to the doctrine of separation of powers, we have noted that often what is implied is as much a part of the constitution as what is expressed. Wade v. Nolan, 414 P.2d 689, 698 (Alaska 1966). The state constitution is divided into a number of separate articles. Since Article III concerns the executive branch, it can fairly be implied that this state does recognize the separation of powers doctrine.[4]

Both federal and state courts have consistently and carefully observed the line which divides their branch of government from that of the executive.[5] They have held that the Attorney General cannot be controlled in either his decision of whether to proceed, or in his disposition of the proceeding.

"In that field, the discretion of the Attorney General is plenary. He is a constitutional officer . . . and, as such, the head of the state's legal department. His discretion as to what litiga-

---

get nor the manpower to effectively prosecute all of the support orders which are presently in arrears. An effective resolution of the problems present in the area of child support can only be made by the legislature through the appropriation of additional funds to the Department of Law for prosecution of contempt proceedings or through the establishment of an independent office charged with the enforcement of support orders. All we do today is to find that the Attorney General, if he so chooses, has the legal authority to carry out his duty to prosecute.

4. See Lira v. Billings, 196 Kan. 726, 414 P.2d 13, 16 (1966), where the Kansas Supreme Court acknowledges that the doctrine is implied from the existence of the three separate constitutional provisions.

5. O'Donoghue v. United States, 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356 (1933); Nashville I–40 Steering Committee v. Ellington, 387 F.2d 179, 185 (6th Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed. 2d 982 (1968); California State Employee Assoc. v. State, 32 Cal.App.3d 103, 108 Cal. Rptr. 60, 64 (1973); Marrone v. State, 458 P.2d 736, 739–40 (Alaska 1969). State v. Cubbage, 210 A.2d 555, 564 (Del.1965).

tion shall or shall not be instituted by him is beyond the control of any other officer or department of the state." State ex rel Peterson v. City of Fraser, 191 Minn. 427, 254 N.W. 776, 778–79 (1934).[6]

The order to prosecute by the Superior Court overstepped this line and was an infringement upon the discretionary powers residing in the executive branch. Such an order is not within the province of the court.

■ We conclude that, although we have jurisdiction to entertain this case and to find, as we have, the existence of legal authority, we do not have power to control the exercise of the Attorney General's discretion as to whether he will take action in any particular cases of contempt for non-support.

*The Court Trustee*

The Department of Law suggests that the court trustee would be a more appropriate party to institute the contempt action. In at least two states court appointees are empowered to institute comtempt proceedings for violation of support orders. Wisconsin Stats.Anno. § 247.29 (West Supp.1974–75); Michigan Compiled Laws 552.251, M.S.A. § 25.171 (1967).

AS 09.55.210 provides:

"*Judgment.* In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide . . .

(5) for the appointment of one or more trustees to collect, receive, expend, manage, or invest, in the manner the court directs, any sum of money adjudged for the maintenance of the wife or the nurture and education of minor children committed to her care and custody;"

Civil Rule 67 provides:

"(b) In any action where payment of moneys for purposes of child support is ordered, payment shall be made to a court trustee appointed by the presiding superior court judge, unless another method is ordered by the court for cause."

Facially, this statute and rule do not appear to prohibit a court trustee from prosecuting contempt actions in non-support cases. However, the functions performed by court trustees are not uniform throughout this state. We take judicial notice that in some districts the court trustee works closely with family court judges and often serves as a master in divorce proceedings.

■ A well established principle of law is that the court may not combine prosecutorial and judicial functions. United States v. Jacquillon, 469 F.2d 380, 387 (5th Cir. 1972), cert. denied 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604; State v. Browder, 486 P.2d 925, 939 (Alaska 1971). Although this precept most often arises in the criminal context, it is equally applicable in the civil area where the conflict of interest and the combination of functions is as readily apparent. For this reason, it would be unwise if not unconstitutional, as a violation of the doctrine of separation of

---

6. *See, e. g.,* United States v. Cox, 342 F.2d 167 (5th Cir. 1965), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700; United States v. Woody, 2 F.2d 262 (D.Mont.1924); In re Grand Jury January, 315 F.Supp. 662 (D.Md.1970); Boyne v. Ryan, 100 Cal. 265, 34 P. 707 (1893); Hermann v. Morlidge, 298 Ky. 632, 183 S.W.2d 807 (1944); Ames v. Attorney General, 332 Mass. 246, 124 N.E. 2d 511 (1955); State ex rel Wilson v. Young, 44 Wyo. 6, 7 P.2d 216 (1932). The tenor of all of these decisions is that there are certain areas, which include the decision of whether to prosecute and how to proceed, in which the Attorney General has complete control, and the court will in no way interfere with that control, at least not by compelling the officer to perform an act entrusted to his discretion. Some courts have, however, indicated several of these cases are applicable to the situation at hand. *E. g.,* Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); United States v. Cox, 342 F.2d 167 (5th Cir. 1965), cert. den., 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700; United States ex rel. Schneider v. Esperdy, 108 F.Supp. 640 (S.D.N.Y.1952), writ dism., S.D.N.Y., 108 F.Supp. 916, aff'd 205 F.2d 242 (2d Cir. 1953); People v. Newcomer, 284 Ill. 315, 120 N.E. 244 (1918).

powers, to charge the court trustee with the duty to prosecute contempt actions.[7]

*The Public Defender*

The trial court found that the defendant in a contempt for non-support proceeding is entitled to court-appointed counsel if he is indigent, a finding which is in agreement with our recent decision in Otton v. Zaborac, *supra*. The Public Defender recognizes that the defendant has the right to counsel, but argues that the agency is not empowered to provide such representation.

The legislation creating the Public Defender Agency states that the services of an attorney and concomitant legal services are to be provided by the Public Defender Agency to

> "(a) An indigent person who is being detained by a law enforcement officer in connection with a serious crime, or is under formal charge of having committed, or is being detained under a conviction of a serious crime, or is on probation or parole, or is entitled to representation under the Supreme Court Rules of Children's Procedure, or against whom commitment proceedings for mental illness have been initiated . . . ." AS 18.85.100.

AS 18.85.170(5)(A) defines a "serious crime" as including "a criminal matter in which a person is entitled to representation by an attorney under the Constitution of the State of Alaska or the United States Constitution." This court has defined a "criminal prosecution" as any offense for which incarceration could be a direct penalty, and from this definition have flowed the rights to jury trial and court-appointed counsel in misdemeanor cases, based upon constitutional considerations. Baker v. City of Fairbanks, 471 P.2d 386 (Alaska 1970);

Alexander v. City of Anchorage, 490 P.2d 910 (Alaska 1971).

In Johansen v. State, 491 P.2d 759 (Alaska 1971), we went beyond traditional classifications and, in essence refused to classify contempt for non-support as either totally civil or totally criminal.[8] In Otton v. Zaborac, *supra*, we held that the indigent defendant in a non-support contempt proceeding is constitutionally entitled to court-appointed counsel. Thus, under AS 18.85.170(5)(A), the Public Defender is empowered to represent Mr. Johnson; the agency is to act in criminal matters, and a criminal matter under that statute is one in which a person is entitled to representation either under the state or federal constitutions.

The agency's primary argument is that, since the passage of the empowering statutes antedates our judicial decisions concerning right to counsel,[9] the legislature could not possibly have intended this class of defendant to be represented by the Agency. This argument is at odds with general precepts of statutory interpretation. Legislation is most often prospective in nature and couched in terms broad enough to embrace future applications which are not and cannot be foreseen with precision at the time of enactment. Continuous, contemporaneous and practical interpretation by executive officers and the courts is a valuable aid in determining meaning, and judicial interpretation is conclusive. Legislative inaction can be evidence of intent, although it is not always a reliable guide.[10] In Alexander v. City of Anchorage, *supra*, our interpretation resulted in significantly expanded authority for the Public Defender Agency. That case reasoned that since an indigent de-

---

7. While the discretion of Alaska Legal Services in accepting clients is not unlimited (42 U.S.C. § 2809(a)(3), Dimmick v. Watts, 490 P.2d 483 (Alaska 1971)), no authority has been brought to our attention suggesting that an indigent is foreclosed from seeking the assistance of Alaska Legal Services in the prosecution of child non-support contempt actions.

8. *See also* Gwynn v. Gwynn, 530 P.2d 1311 (Alaska 1975).

9. The statutes were passed in 1969 (§ 1 Ch. 109 SLA 1969).

10. 2A J. Sutherland, Statutes & Statutory Construction § 49.01–49.10 (4th Ed.Sands 1973).

fendant is entitled to representation by counsel when a direct penalty may be incarceration, it follows that any such offense is a serious matter and a "serious crime" within the meaning of the Public Defender Act. 490 P.2d at 916.

■ Although the legislature, at the time of enactment of the act, may not have foreseen the development of the law in this area and, therefore, might not have foreseen this precise application of the act, there is also no indication that it intended to exclude this class of defendants from representation. To so include them does no violence to the rules of statutory construction.[11]

As we have noted above, the enforcement of child support orders is affected with the public interest. This is an area in which the legislature could fashion a new and more effective system to enforce the parental obligation to furnish child support. We recommend that the legislature consider the enactment of new legislation in this field. In particular, we note that, under the present scheme, the custodial parents and children are often unable to afford private counsel and are thus unable to enforce child support orders. We hope that the legislature will rectify this situation as soon as possible by providing a means of efficiently and effectively enforcing a child's right to support payments. Until such a system is created, a child's right to support will be unfairly burdened in that, unlike the non-custodial parent, the child and the custodial parent will have no guarantee that a publicly supported attorney will vindicate their rights under the child support order.

Reversed in Part and Affirmed in Part.

FITZGERALD, J., not participating.

---

11. Again, budgetary limitations may effectively preclude the agency from performing an adequate job on this type of case. However, until there is an appropriation for the prosecution of these cases, the increase in the agency's caseload will be minimal. This is within the area of the legislature's discretion. Nothing we have said forecloses the indigent defendant in a child non-support contempt proceeding from seeking the aid of Alaska Legal Services.