**STATE of Alaska, Appellant,**

v.

**NORTHWESTERN CONSTRUCTION, INC., Appellee.**

**No. S–1141.**

Supreme Court of Alaska.

Aug. 7, 1987.

Donald W. McClintock, III, Baily & Mason, Anchorage, for appellant.

R. Everett Harris, Jensen, Harris & Roth, Anchorage, for appellee.

OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

This case arises out of a construction project at Anchorage International Airport which allegedly involved substantially more and different work by the contractor, Northwestern Construction, Inc. (Northwestern), than had been indicated by the State of Alaska's (state) plans and specifications upon which Northwestern had based its bid. The trial court awarded Northwestern $1,101,423.00 plus prejudgment interest as an equitable adjustment of the contract price required by the extra work it performed. The state has appealed.

The state does not here contest liability. It challenges only the method by which the damage award was calculated and the inclusion of certain elements of profit and home office overhead in that calculation.

With one exception, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The project at issue involved construction of the new north-south runway at the Anchorage International Airport. It required clearing, excavation, and embankment for a 10,500 foot long north-south runway, parallel taxiway, cross-taxiways and access roads. A substantial portion of the project involved the "unclassified excavation" of the runway-taxiway core areas (those areas under the future pavement) and placement (embankment) of the material in the adjacent future lease area. Northwestern submitted the lowest bid, amounting to $22,639,744.00.

To build the project as designed, the earth materials to be used had to be compactible to 95%, but Northwestern discovered that vast amounts of earth materials on the site were too wet to compact as planned. Consequently, Northwestern's work was disrupted, changed and increased.

The trial court placed at least partial blame on the state for the problem, finding that the state's soil testing procedures "were contrary to the requirements of

§ 330.3(f) of the Contract, inaccurate, and hence compounded delays and excessive costs...."

Northwestern submitted to the state a claim for several adjustments in the contract price to which it asserted it was entitled because of the extra work it had performed. One of the adjustments it sought was for unclassified excavation in the amount of $1,026,128.00. Northwestern's claim was analyzed and prepared primarily by Bruce Campbell (Campbell), whose expert testimony at trial was heavily relied upon by the trial court. The administrative contracting officer, Ramon Shumway (Shumway), denied the claim. Northwestern then filed its complaint for damages in superior court. The trial court, sitting without a jury, awarded $950,695.00 on Northwestern's unclassified excavation claim.

The state appeals from this award claiming that: 1) the trial court improperly relied on rental rates published in the Rental Rate Blue Book for Construction Equipment (Blue Book) to determine increased equipment costs resulting from the extra work; 2) the trial court erred in not reducing the award based on Blue Book rates by 50% for overtime equipment hours; 3) Northwestern received a double recovery when the trial court awarded 15% of Northwestern's total increased cost for profit in addition to equipment costs at Blue Book rates, which already include some element of profit; 4) the trial court improperly awarded 10% of Northwestern's increased costs for overhead without proof that Northwestern's overhead actually increased; and 5) the trial court erred in accepting Northwestern's tabulation of equipment hours.

## II. DISCUSSION

■ The trial court correctly held that Northwestern need only prove its damages to a "reasonable certainty." *Native Alaskan Reclamation & Pest Control v. United Bank Alaska,* 685 P.2d 1211, 1223 (Alaska 1984), *quoting* Restatement (Second) of Contracts § 352, at 144 (1981). We have held as a general rule that a plaintiff in a

contract action need not prove damages with mathematical precision. *Id.* at 1222–23, *quoting* Restatement (Second) of Contracts § 352, comment a (1981). Thus, we assess the state's objections in light of these standards.

### A. USE OF "BLUE BOOK" EQUIPMENT RENTAL RATES

The state first asserts that the trial court improperly adopted a damage calculation based on published Blue Book rental rates for estimating equipment costs without first requiring Northwestern to show that its actual equipment costs were unavailable. This claim is without merit.

The contract between the state and Northwestern provided that increased equipment costs for extra work would be compensated as follows:

> [T]he Contractor may receive the rental rates not to exceed those specified in the current edition of the "Rental Rate Blue Book for Construction Equipment, published by Equipment Guidebook Company," for the actual time that such equipment is in operation on the work.

Thus, the parties contemplated use of Blue Book rates as an appropriate measure for equitable adjustment of equipment costs.

There is also substantial evidence in the record here that Blue Book rates are commonly relied on in the construction industry in Alaska. Campbell, Northwestern's expert, had been Alaska's Commissioner of Highways from 1971 to 1975. Campbell testified that he used Blue Book rates both as a contractor and as Commissioner of Highways "in determining equitable contract adjustments."

Shumway testified that in his position as deputy commissioner and contracting officer for the state, he frequently negotiated contract change-orders, supplemental agreements and claims for above-bid compensation. He testified that in these negotiations he and his staff "used almost entirely the Blue Book" in establishing contractors' equipment rates and that the Blue Book was the standard rate book used by the State of Alaska.

■ On appeal, this court will intervene only when convinced that the trial court's findings of fact are clearly erroneous. Alaska R.Civ.P. 52(a); *Alaska Far East Corp. v. Newby*, 630 P.2d 533 (Alaska 1981); *Saxton v. Splettstoezer*, 557 P.2d 1126, 1127 (Alaska 1977). In other words, we must be left with "a definite and firm conviction ... that a mistake has been made." *Native Alaskan Reclamation*, 685 P.2d at 1217, *quoting Mathis v. Meyeres*, 574 P.2d 447, 449 (Alaska 1978).

■ Given the contract clause approving use of Blue Book rates and Campbell's and Shumway's testimony that they used the Blue Book to negotiate claims on behalf of the state itself, we cannot say that the trial court's adoption of a damage calculation based on Blue Book rates was clearly erroneous.

### B. OVERTIME EQUIPMENT HOURS

The state claims that the trial court incorrectly applied Blue Book rates to overtime equipment hours (i.e., more than eight hours per day) because it failed to reduce the rates by 50%. It claims that language both in paragraph 90–05(d) of the contract [1]

1. Section 90–05(d) of the Contract provides in part:

 These rates shall apply for equipment used during the Contractor's regular single shift of eight (8) hours per day. Where the equipment is used more than 8 hours per day either on extra work or on the Contractor's normal work, 50% of the basic rate for each additional hour worked over and above the 8 hours shall apply.

2. Introduction to the Blue Book provides in part:

 Overtime may be charged in one of two ways, depending upon the agreement:

 ....

 2. At 50% of the base rate for each additional 8 hour shift period: Two shifts—1½ times the base rate. Three shifts—2 times the base rate. Fractions of a shift adjusted proportionally.

3. Points on Appeal 22, 23 and 28, cited by the state, are as follows:

 22. The trial court erred in awarding unclassified excavation claim damages utilizing Blue Book rental rates for equipment costs.

 23. The trial court erred in ruling that the use of Blue Book rental rates was reasonable in computing equipment costs.

and in the introduction to the Blue Book [2] require such a reduction.

In response, Northwestern argues that the state has waived any such claim because it was not raised at trial or in its points on appeal. Northwestern points out that the state has not cited to any part of the record when this claim was raised, as required by Appellate Rule 212(c)(8), nor has it specified the issue in its points on appeal,[3] as required by Appellate Rule 210(e). Lastly, Northwestern argues that the claim is without merit. The state's response is to reiterate its claim and provide record citations which allegedly show that the 50% reduction issue was raised at trial, or if not, that the trial court's failure to apply the 50% reduction constitutes plain error.

The record discloses that at no time did the state raise the 50% reduction issue at trial. On the contrary, the state's consistent position was that Northwestern was entitled only to actual costs, unless it could prove that data concerning actual costs was unavailable.[4] In that event resort to the Blue Book might be permissible, but since there was evidence that Northwest-

28. The court erred in not holding the plaintiff to their burden of proof of showing that their own internal book costs were inadequate so as to justify reliance upon Blue Book costs.

4. Pretrial Memorandum of Defendant, State of Alaska (Northwestern's actual costs are less than Blue Book rates, Northwestern at fault, 50% reduction not mentioned); Defendant's Supplementary Memorandum on Certainty of Damages (Northwestern's actual costs are all it is entitled to recover, 50% reduction not mentioned); Defendant State of Alaska's Post Trial Brief (Northwestern entitled to actual costs, resort to Blue Book rates should not be allowed, Phelps' figures are the most reasonable, 50% reduction not mentioned); Defendant's Proposed Findings of Fact and Conclusions of Law (Northwestern entitled to actual costs, figures were available to it and thus rental rates (Blue Book) not allowable, Phelps' figures should be adopted, 50% reduction not mentioned); Defendant's Rebuttal Brief (Blue Book inapposite as Northwestern could generate actual costs, Blue Book only applicable for force account work, Phelps' figures closer to actual cost and should be used, 50% reduction not mentioned).

ern could provide data concerning actual costs, Blue Book figures should be rejected and the actual cost estimates of the state's expert, Robert Phelps, should be adopted.

■ As a general rule, this court will not consider an issue raised for the first time on appeal. *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 351 (Alaska 1982); *Saxton v. Splettstoezer*, 557 P.2d at 1127. However, if the issue is 1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings, *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985), or constitutes "plain error," *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981), it may nonetheless be considered. The state seeks refuge under either theory.

■ The state fails to satisfy any prong of the *Zeman* test. Regarding "new or controverted facts," the state simply states that this prong is satisfied because "the contract terms are a matter of record." While this is unquestionably correct, the state neglects to mention the factual determinations inherent in attempting to identify which pieces of equipment were used on which days, for how many hours, over a two-year period on the unclassified excavation portion of the project. The raw data for this determination may be contained in the six foot thick computer printout admitted at trial, but the state does not so assert and it is not possible for us to determine. As noted by Northwestern, its expert and the state's expert agreed on almost none of the data obtained from the same job records. We cannot presume they could agree with the underlying facts regarding this issue, either.

Even if the raw data is available in the printout, it is by no means clear how a 50% reduction is to operate on specific facts. The work for which Northwestern recovered in this lawsuit is only a portion of the total work it completed on the project. A review of Northwestern's equipment usage records reveals instances in which a piece of equipment was used for more than eight hours in a day, but less than eight hours each on work for which Northwestern recovered in this lawsuit and work that was not here at issue. There is no evidence regarding how the 50% reduction provisions apply to this or similar situations. The contract and the Blue Book do not offer any guidance. The intention of the parties and industry practice, if either there be, are not of record. Facts must be developed to resolve these questions.

The second and third prongs of the *Zeman* test are not met either. The state's 50% reduction argument cannot be said to be "closely related" to its trial argument. As above stated, the state's position was that the Blue Book should not be used at all, not that it was being used incorrectly. The state did not say, "Don't use the Blue Book at all, but if you must, a 50% reduction in rates for overtime equipment hours will be required."[5] Since no pleading even alludes to the existence of a 50% reduction factor applicable to this dispute, it cannot be said that the issue "could have been gleaned from the pleadings."

■ Under the "plain error" doctrine, an issue not raised at trial may nonetheless be considered by this court if it appears that an obvious mistake has been made which creates a high likelihood that injustice has resulted. *Miller v. Sears*, 636 P.2d at 1189. First, it is not at all obvious that a mistake has been made. There is no evidence that *any* state representative used a 50% reduction factor in computing damages in this case, either in projecting the state's possible exposure if found liable or in attempting to impeach Campbell's conclusions. We cannot presume that this omission was inadvertent. This, coupled with the state's failure ever to mention the 50% reduction issue before the trial court,

5. The state did offer supplemental findings and a supplemental conclusion on damages, denominated Alternative Finding of Fact No. 246(a) and Alternative Conclusion of Law No. 61(a). These pleadings offered a different computation of damages, melding actual costs from some exhibits and Campbell's figures where actual costs were not available, applying Phelps' corrected Blue Book rates to the latter. These Blue Book rates are not altered by any reduction factor, nor is one mentioned.

does not lead to the necessary conclusion that an "obvious" mistake has been made. The dissent's position that plain error occurred is unpersuasive; the trial court simply applied the Blue Book formula in precisely the same manner as both parties to the dispute had done. Moreover, the state has failed to offer any anticipated evidence of the "injustice" that has allegedly occurred. Otherwise stated, for its own reasons the state has not computed the difference between the cost of overtime equipment hours as determined by Campbell and as would be shown by using its method.[6] In the absence of any clue of what material change would result in this component of the damage award, we should not and will not presume a high likelihood that injustice has resulted. *See Reese v. Geiermann,* 574 P.2d 445, 446 (Alaska 1978).[7]

## C. PROFIT

■ The state asserts that the award of 15% profit in addition to Blue Book rates resulted in a double recovery. The trial court's implicit finding that no double recovery occurred cannot be overturned unless clearly erroneous. *Native Alaskan Reclamation,* 685 P.2d at 1215.

■ Supporting the trial court's decision is the fact that when the state's expert prepared his rebuttal analysis *using Blue Book rates,* he added 15% for profit in three separate calculations. Likewise, the state adopted a Blue Book *plus* profit approach when it approved two other portions of Northwestern's claim that were admitted before trial. Based on this evidence, we find that the trial court's decision to award 15% profit in addition to Blue Book rates was not clearly erroneous.

## D. OVERHEAD

■ The state asserts that the trial court erred in awarding Northwestern 10% of increased cost for overhead without requiring proof of delay or actual increase in overhead cost. This contention is without merit. Campbell testified that an award of 10% overhead was customary in the industry. This testimony was unrefuted. Moreover, in analyzing Northwestern's claims, the state's own personnel used the same overhead percentages as Campbell.

This percentage of increased costs approach is commonly used to determine overhead damages when the owner's breach results in the contractor having to do *extra* work.

> Since it is normal accounting practice to charge indirect costs at a *percentage rate* of direct costs reflecting the contractor's experience over a period of time, it would normally be expected that any direct costs in an equitable adjustment would bear their standard amount of overhead. This practice has been applied whether the direct costs have increased or decreased—a proportional amount of overhead will be included in the equitable adjustment.... Thus, it is quite normal to find decisions of appeals boards and courts applying *standard* overhead rates in the equitable adjustment area.

R. Nash, *Government Contract Changes* 362 (1975) (emphasis in original). Since mere delay does not necessarily increase direct costs, the state's reliance on authorities establishing standards of proof for recovering overhead in a strictly delay situation is misplaced. Where, as here, increases in direct costs are established, a percentage thereof offers a reasonable method of calculating overhead. *See, e.g., Bennett v. United States,* 178 Ct.Cl. 61, 371 F.2d 859, 863–64 (1967); *Elias v. Wright,* 276 F. 908, 910 (2d Cir.1921); *A.T. Klemens & Sons v.*

---

**6.** We note that nowhere has the state requested the relief implicitly advocated by the dissent that the case be remanded for recalculation of damages based on the 50% reduction.

**7.** In *Reese* we found no plain error in the trial court's reliance on an appraisal of certain real property despite appellant's claim that the appraiser had improperly assumed that any sale of the property would have been on an installment rather than cash basis. We held: "The report does not specify whether the estimate of value assumed a cash or installment sale, and no evidence was presented at trial that there would be any difference in value under the two assumptions for the type of real estate involved." 574 P.2d at 446.

*Reber Plumbing & Heating Co.*, 139 Mont. 115, 360 P.2d 1005, 1011 (1961).

### E. TABULATION OF EQUIPMENT HOURS

 The state claims that the damage calculation adopted by the trial court includes an inaccurate tabulation of certain equipment hours. In his calculation of actual support equipment costs resulting from the extra work, Campbell lists 777 hours of #16 grader time and no time for the less expensive #14 grader that was used in Northwestern's bid calculation. The actual equipment hour summaries show substantial hours logged for *both* #16 and #14 graders under the relevant cost codes. Thus, the figures used by Campbell to calculate actual grader costs are clearly in error.

We reverse the trial court on this issue and remand the case for recalculation of Campbell's damage formula using the correct grader hour allocation.

### III. CONCLUSION

The record amply supports the trial court's decision to use Blue Book rates in calculating Northwestern's damages. Likewise, the award of 15% profit and 10% overhead was not clearly erroneous. The issue of reducing Blue Book rates for overtime hours is not properly before this court. However, there is no basis in the record for the grader hours used in the damage calculation adopted by the trial court. The case must be remanded for a recalculation of damages based on actual grader hours logged.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

MATTHEWS, J., joined by RABINOWITZ, C.J., dissenting.

MATTHEWS, Justice, joined by RABINOWITZ, Chief Justice, dissenting in part.

I dissent from part IIB of the opinion relating to overtime equipment hours. The trial judge made a finding that Northwestern's damages, including equipment costs, totalled $950,695.00. This is a finding of fact which is clearly erroneous because the contract (by incorporating the Blue Book rates) clearly calls for a 50% overtime adjustment. There is no need to object to an erroneous determination of fact at the trial level as a prerequisite of challenging the determination on appeal. Civil Rule 52(b) is explicit on this point. It provides:

> When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment.

Moreover, the court's calculation of damages for overtime hours is plain error. "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981). The court used the Blue Book rates in computing Northwestern's equipment costs, but made a mistake in applying the rates because it did not use the 50% reduction factor called for by the Blue Book. This is an obvious mistake. It is also obviously prejudicial because the state is being made to pay twice what it should have to pay for overtime equipment use. The state should not be required to prove the exact dollar amount of the overcharge on appeal in order to show that an injustice has occurred.