SOUTHEAST ALASKA CONSTRUC-
TION COMPANY, INC., a/k/a Sea-
co, Inc., Appellant and Cross-appellee;

v.

STATE of Alaska, DEPARTMENT OF
TRANSPORTATION AND PUBLIC
FACILITIES, Appellee and Cross-ap-
pellant.

Nos. S–2781, S–2804.

Supreme Court of Alaska.

April 27, 1990.

Rehearing Denied June 21, 1990.

Hugh G. Wade, Wade & De Young, An-
chorage, for appellant and cross-appellee.

Linda L. Walton, Asst. Atty. Gen., Fair-
banks, and Douglas B. Baily, Atty. Gen.,
Juneau, for appellee and cross-appellant.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON and
MOORE, JJ.

MOORE, Justice.

This case concerns a public construction
project to improve the airport runway in
Ruby, Alaska. The project suffered from
design and material problems, and the con-
tractor never completed the work. The
contractor filed a claim against the State
Department of Transportation and Public
Facilities ("DOTPF") for additional com-

pensation, and DOTPF sought liquidated damages from the contractor. The superior court, Judge James R. Blair, entered summary judgment for DOTPF, and the contractor appealed. We affirm.

## I.

Southeast Alaska Construction Company ("SEACO") was the successful bidder on a public construction contract to improve an existing airport runway in Ruby, Alaska. The project was to be completed by October 15, 1985 at a total cost of $546,870.30.

Soon after SEACO began work, it informed DOTPF that the project design contained grading errors and that designated stockpiles of surface course and embankment materials were inadequate or unavailable. SEACO and DOTPF met to resolve these problems during August 1985 and substantially redesigned and expanded the scope of the project. SEACO began work on the expanded project almost immediately.

On September 4, DOTPF issued change order number 1 which purported to set forth the agreement negotiated in August. However, SEACO refused to sign the change order, and the precise terms of the August agreement remain in dispute. SEACO demobilized for the winter without meeting the October 1985 completion deadline.

In December 1985, SEACO submitted a claim for delay damages and compensation for extra work totaling $596,095.85 and requested an extension of the completion deadline to July 15, 1986. The contracting officer adjusted certain unit prices and extended the completion deadline for the expanded project to July 31, 1986. The contracting officer's decision entitled SEACO to a payment of $33,968 for work already performed.

In the meantime, the company which provided SEACO's performance and payment bonds became insolvent and was liquidated.

SEACO filed a petition in bankruptcy in May 1986. SEACO .actively opposed DOTPF's motion to lift the automatic stay in bankruptcy to permit termination of the contract. *See* 11 U.S.C. § 362 (1988).

In June 1986, DOTPF filed a complaint in superior court seeking a declaration that it was entitled to withhold payment on the contract until SEACO provided replacement bonds. SEACO answered and counterclaimed for damages based on the same facts underlying the December 1985 administrative claim. The superior court ruled that SEACO's counterclaim should have been prosecuted as an administrative appeal from the decision of the contracting officer. SEACO perfected its claim under the applicable procedures and requested a trial de novo. The superior court consolidated the cases and granted a trial de novo.

The superior court ruled that the measure of damages for extra work was out-of-pocket expenses plus reasonable compensation for using SEACO-owned equipment and reasonable overhead and profit.[1] The court also ruled that damages for use of SEACO-owned equipment would be calculated at actual bid rates rather than Blue Book rental rates. The court precluded SEACO from recovering damages exceeding those supported by documents produced in discovery. The court then ruled that based on SEACO's own records SEACO's maximum possible recovery was $130,-478.02.

DOTPF moved for summary judgment that it was entitled to recover liquidated damages for delay after the extended contract deadline of July 31, 1986. The court ruled that DOTPF was entitled to recover liquidated damages for the period between the extended contract deadline of July 31, 1986 and June 23, 1987 when the bankruptcy court deemed SEACO to have abandoned the contract. At $750 per day, the

---

**1.** In essence, this ruling permitted SEACO to recover on a "cost-plus" or "total cost" basis. In *Fairbanks North Star Borough v. Kandik Constr.,* Op. No. 3571 at 10 (Alaska, March 2, 1990), *reh'g granted,* No. S–2772 (Alaska, April 13,

1990), we disapproved of the total cost approach on the ground that it tends to impose liability on the project owner "far in excess of the damages proximately resulting from its breach of contract."

court calculated that the total liquidated damages award was $207,750.

The court entered final judgment for DOTPF for $76,750, the amount by which DOTPF's liquidated damages exceeded SEACO's maximum potential recovery of $131,000.

SEACO appealed. It contends that the superior court erred in entering summary judgment limiting its maximum potential recovery and awarding the state liquidated damages for delay.[2]

## II.

■ SEACO argues that the superior court erred in concluding that its recovery for extra equipment costs was limited to the actual rates which SEACO bid for equipment use in the original contract rather than Blue Book rental rates. SEACO relies on our decision in *State v. Northwestern Construction*, 741 P.2d 235 (Alaska 1987). In that case, errors in state soil-testing procedures increased the amount of work necessary to construct a new runway at Anchorage International Airport. 741 P.2d at 236–37. The trial court relied on Blue Book rates to determine the increased equipment costs resulting from the extra work. 741 P.2d at 237. On appeal, we ruled that the use of Blue Book rates was not clearly erroneous because (1) the contract provided for the use of Blue Book rates to measure extra equipment costs, and (2) Blue Book rates were commonly used to adjust disputes in the local construction industry. *Id.*

More recently, in *Kandik Construction*, we reviewed a contract which expressly stated that excess equipment costs would be compensated at the prevailing Fairbanks equipment rental rates. Op. No. 3571 at 13–14. The jury was permitted to award damages based on either Blue Book or prevailing Fairbanks rates. *Id.* We disapproved the jury instruction on the ground

that it conflicted with the measure of recovery set forth in the contract. *Id.*

These cases permit recovery for extra equipment costs according to the agreement of the parties. Thus, we must examine the contract to determine whether it requires compensation at Blue Book rates.

Sections 10–13 and 40–03 of the contract authorize the contracting officer to issue a change order to require the contractor to perform work within the original scope of the contract. Under section 10–47, work which is not within the original scope of the contract must be covered by a supplemental agreement. Section 40–06 defines "extra work" as work for which there is no basis of payment in the original contract, change orders, or supplemental agreements. When acceptable completion of the contract requires the performance of extra work, the project engineer may issue a change order or order the contractor to perform the extra work according to section 90–05. Section 90–05 provides that extra work will be compensated at the rates set forth in the order authorizing the work, or, if no rate is established, the engineer may require the contractor to perform the work on a time and materials basis. Subsection 90–05(3) provides that the contractor shall receive Blue Book rental rates for machinery and equipment provided on a time and materials basis.

SEACO argues that the use of its equipment constitutes extra work compensable under section 90–05(3) at Blue Book rates. We disagree. When additional work is required, section 90–05 permits the project engineer to issue a change order or compel performance of the work on a time and materials basis. Here, the engineer issued a change order. Thus, the contract does not compel recovery at Blue Book rates. Instead, the unit prices may be extrapolated from the original contract or from the change order authorizing the work.[3] Al-

---

**2.** We decline to address the other issues raised in the points on appeal because they received only cursory treatment in SEACO's briefs on appeal. *See Pletnikoff v. Johnson*, 765 P.2d 973, 976 n. 2 (Alaska 1988).

**3.** In this case, DOTPF calculated SEACO's actual bid rates from bid sheets provided by SEACO during discovery, then multiplied the rate by the total number of hours SEACO claimed to have used the equipment. SEACO does not assert

though SEACO asserts that the change order does not accurately reflect the agreement expanding the scope of the project, its remedy is to seek an equitable adjustment under section 50–15 of the contract general conditions. The mere existence of a dispute does not entitle it to recover all its extra equipment costs on a time and materials basis. We hold that the superior court did not err in refusing to compensate SEACO for the use of extra equipment at Blue Book rental rates.

## III.

■ SEACO argues that the superior court erred in entering summary judgment limiting SEACO's maximum possible recovery to $130,478.82. Specifically, SEACO contends that the financial records produced in response to discovery requests create genuine issues of material fact regarding its total out-of-pocket and owned-equipment expenses.

During discovery, DOTPF requested that SEACO produce all financial records pertaining to the airport expansion project. In response, SEACO produced several boxes of records which were not catalogued in any way.[4] DOTPF employed Michael Kelliher, a certified public accountant, to analyze the data SEACO produced. Kelliher assumed that DOTPF was liable for every element of damages asserted by SEACO. Based on SEACO's records, Kelliher prepared an affidavit stating that SEACO's total out-of-pocket project costs did not exceed $413,590.44. James Romersberger, a DOTPF resident engineer, calculated that SEACO was entitled to recover a maximum

of $148,756.86 for its use of owned equipment.[5] These numbers total $562,347.30. Richard Stock, another certified public accountant, added 16% projected profit and overhead totaling $89,975.58. The maximum total contract cost for all the work SEACO claimed to have performed is $652,-322.88. Since DOTPF already had paid SEACO $521,844.11, Stock concluded that SEACO's maximum potential recovery from DOTPF was $130,478.02.[6]

SEACO did not specifically refute these analyses or calculations. Instead, SEACO asserted that the records underlying these calculations created genuine issues of material fact precluding summary judgment. The court found SEACO's response inadequate to create any genuine issue of material fact and entered partial summary judgment for DOTPF.

We will affirm the entry of summary judgment when the evidence in the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c). The burden is on the moving party to establish the absence of genuine issues of material fact. *Jennings v. State*, 566 P.2d 1304, 1309 (Alaska 1977). Once a moving party establishes by competent evidence the absence of genuine issues of material fact, the non-moving party must clearly and specifically demonstrate that it can produce admissible evidence disputing the movant's evidence. *Fomby v. Whisenhunt*, 680 P.2d 787, 792–93 (Alaska 1984); *Jennings*, 566 P.2d at 1309–10 & n. 14; Alaska R.Civ.P. 56(e).

that its actual bid rates were higher than those calculated by DOTPF.

4. It did so under Civil Rule 33(c), which provides:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer

may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries.

5. The total for owned equipment equals the actual bid rates multiplied by the total number of hours SEACO claimed the equipment was used plus compensation for all claimed standby time at Blue Book rates.

6. By our calculations, the maximum total recovery was $130,478.77, a difference of seventy-five cents.

SEACO's response to DOTPF's various motions for summary judgment falls far short of this standard. Having invited DOTPF to ascertain SEACO's expenses from the records produced in discovery under Civil Rule 33(c), it was incumbent upon SEACO to present specific, admissible evidence tending to controvert DOTPF's calculations. Because SEACO failed to produce evidence disputing the analysis which it had invited the state to perform, we conclude that the superior court did not err in entering partial summary judgment for DOTPF.

### IV.

■ SEACO argues that the superior court erred in concluding that DOTPF was entitled to liquidated damages because the court did not first determine whether the delay in completion resulted from DOTPF's breach of contract. DOTPF contends that it is entitled to liquidated damages because (1) the contract permits DOTPF to recover liquidated damages even when it is responsible for the delay, and (2) SEACO agreed to an extended completion deadline after learning of all DOTPF's purported breaches.

■ A liquidated damages provision is enforceable if (1) the liquidated amount is a reasonable forecast of compensation for the harm caused by the breach, and (2) the harm caused is difficult to assess accurately. *Arctic Contractors v. State*, 564 P.2d 30, 49 (Alaska 1977). However, an owner may not recover liquidated damages for delay caused by the owner's insistence that the contractor perform work outside the scope of the original contract. *Alaska State Hous. Auth. v. Walsh & Co.*, 625 P.2d 831, 839 (Alaska 1980).

The liquidated damages clause [7] provides: It is expressly understood and agreed that in case of the failure on the part of the Contractor, for any reason, except with the written consent of the Contracting Officer, to complete the ... work before [October 15, 1985], [DOTPF] shall

have the right to deduct ... or ... to recover SEVEN HUNDRED FIFTY AND NO/100 ... per day for each calendar day elapsing between the time stipulated for the completion and the actual date of completion.... Provided, however, that upon receipt of written notice from the Contractor of the existence of causes over which the Contractor has no control and which must delay the completion of the work, the Contracting Officer may, at his discretion, extend the period specified for the completion of the work, and in such case the Contractor shall become liable for liquidated damages for delays commencing from the date on which the extended period expires.

SEACO does not argue that the liquidated damages provision is unenforceable. Instead, SEACO asserts that it could have completed the work by the original October 1985 deadline had DOTPF's initial plans been accurate. Thus, SEACO contends that summary judgment was improper because the evidence presents a genuine issue of material fact: the identity of the party responsible for the delay.

We disagree. In its December 1985 administrative claim, SEACO asserted that it could complete performance by July 15, 1986, and DOTPF extended the deadline until July 31, 1986. SEACO obligated itself to complete performance by July 31, 1986 in light of all of DOTPF's pre-December 1985 conduct. DOTPF cannot be held responsible for delay after the extended completion deadline for any conduct of which SEACO knew or should have known prior to submitting the administrative claim.

The only post-December 1985 conduct of which SEACO complains is DOTPF's failure to "promptly and fairly" resolve the administrative claim, and its refusal to make a progress payment in April 1986. SEACO has made no showing that DOTPF acted arbitrarily or in bad faith in the resolution of this dispute. Moreover, DOTPF

---

7. Section 80–08 of the general contract provisions also addresses DOTPF's entitlement to liq-    uidated delay damages.

was entitled to withhold the April 1986 progress payment in order to induce SEACO to comply with the requirement that it maintain valid payment and performance bonds. *See Arctic Contractors,* 564 P.2d at 41–44.

The decision of the superior court is AFFIRMED.