*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMIE H., | ) | |
| | ) | Supreme Court No. S-15346 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-11-00024CN |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 6957 – October 10, 2014 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna Moran, Judge.

Appearances: Megan Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Janell M. Hafner, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I. INTRODUCTION

Jamie and Anna are the parents of Ian, a young teenager.[1] The Office of Children's Services (OCS) sought termination of Jamie's, but not Anna's, parental rights to Ian. In closing argument, Jamie asserted that termination of his parental rights was not in Ian's best interests because OCS had not identified any permanent placement. But the superior court did not specifically address this issue in its findings when it ordered the termination of Jamie's parental rights. Jamie appeals, arguing that the termination should be vacated because the decision does not clearly state that termination of Jamie's parental rights was for purposes of freeing Ian for adoption or other permanent placement. But we conclude that the superior court did not err when it found that termination was in Ian's best interests.

## II. FACTS AND PROCEEDINGS

### A. The Family

Jamie and Anna were a couple for many years. They both have mental health issues, addiction issues, and extensive criminal histories. Jamie began using marijuana when he was 12 years old, after he was seriously injured in a car accident, and by age 13, he was using methamphetamine. Anna's uncle sexually abused her, starting when she was six years old, and her mother and grandmother were aware of the abuse but did nothing to stop it. At age 16, Anna had a baby, whom she eventually gave up for adoption. Soon after that, Anna began using methamphetamine.

Jamie and Anna had two other children when they lived in Oklahoma, but those children have always lived with Jamie's mother and step-brother and were not parties to these proceedings. Before Anna became pregnant with Ian (born in 2000), and

---

[1] We use pseudonyms to protect the parties' privacy.

during the first six months of her pregnancy, both parents regularly used methamphetamine. They stopped using when they realized Anna was pregnant, but after Ian's birth they went back to abusing drugs and alcohol, with periods of sobriety. Although Ian lived with his parents during his early years, by the time he was four, he and his two non-party siblings were living with Ian's grandmother in Oklahoma while his parents lived elsewhere. According to Jamie, Ian was exposed to domestic violence by Jamie's brother during that time.

Jamie, Anna, and Ian moved to Alaska in 2004. Once in Alaska, Jamie and Anna had three more children; Kirsty was born in 2006, James was born in 2008, and Jon was born in 2010. The couple's relationship was chaotic and physically abusive, and apparently they were separated at the time of trial. All four children have special needs.

## B.    OCS's Involvement With The Family

The family's first encounter with OCS was in 2006, when the agency investigated a report of harm claiming that the family's pet pit bull bit Ian's face. The doctor who evaluated Ian determined that he suffered from attention deficit hyperactivity disorder with complex emotional trauma, and probable chronic post-traumatic stress disorder relative to a disruptive chaotic home environment and exposure to domestic violence and drug and alcohol use. The doctor also noted that Ian had probable brain damage and recommended more assessments and medication. Ian's mental illness and behavioral issues were compounded by his lack of care at home. At age six, Ian had to feed himself, routinely stayed up until 2:00 in the morning, had to get himself up and off to school, and often left for school on an empty stomach.

OCS initiated a plan to help Ian's parents manage his aggressive behavior. To assist in parenting education, a family support agent with Kenai Peninsula Community Care Center met with the parents twice a week for eight months. According

to the agent, Anna was relatively engaged, but Jamie showed little interest in parenting and rarely participated. The agent eventually discharged the family from in-home services because they had missed several meetings in a row and neither parent had followed through with a structured routine or adequate supervision for Ian.

OCS was not significantly involved with the family again until June 2011, when police called OCS to report that Anna was suicidal; Anna had called friends and told them she was planning to leave James and Jon in the car while she walked into the forest to kill herself. At that time, Ian and Kirsty were at home alone, and Jamie was in jail because of a domestic incident involving a firearm. An OCS worker went to the home and discovered that the children were very hungry, five-year-old Kirsty was wearing nothing but a diaper, and ten-year-old Ian was hoarding an empty peanut butter container. There was plenty of food for the pit bulls in the yard, but no nutritious food for the children. Ian and Kirsty were placed in one emergency foster home, and James and Jon were placed in another.[2] Prins filed an Emergency Petition for Adjudication of Children in Need of Aid and for Temporary Custody, asserting that the children were in need of aid under AS 47.10.011(2), (8), (9), and (11).[3]

---

[2]     Ultimately, Kirsty was moved to live in the same foster home as James and Jon.

[3]     AS 47.10.011 provides in pertinent part that the superior court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to: (2) a parent being incarcerated, (8) conduct or conditions created by the parent that have resulted in mental injury to the child or placed the child at substantial risk of mental injury as a result of a pattern of the parent's behavior, (9) parental neglect, or (11) parental mental illness or serious emotional disturbance that places the child at substantial risk of harm.

## C.     Ian's Situation

Since Ian's removal from the family residence, he has lived in several long-term residential treatment facilities.  At the time of trial, Ian was at Family Centered Services of Alaska, a therapeutic foster home, where his stay was indefinite.  According to OCS, Ian was diagnosed with dysexecutive syndrome, a cognitive disorder; oppositional defiant disorder; and mood disorder. In therapy, Ian would share that he missed his mother, and he often looked forward to family sessions with her, but he rarely mentioned his father and did not ask to see him.  In fact, because of Ian's emotional instability and his statements that he never wanted to see his father again, visitation with Jamie has not been deemed therapeutically appropriate.  Since Ian was taken into OCS custody in June 2011 he has had little or no contact with his father but has had some successful visits with his mother.

## D.     The Superior Court's Findings

In December 2012 OCS filed a petition to terminate Jamie's parental rights to all four children and Anna's rights to the three younger children only.  Before trial, Anna relinquished her parental rights to the three younger children with the understanding that if the court did not terminate Jamie's parental rights, she could withdraw her relinquishment.  As a result, neither party presented evidence regarding Anna's conduct.

In support of its petition, OCS presented evidence regarding Jamie's personality disorders, substance abuse, criminal history, and failure to conform to social norms.  OCS also presented testimony that Ian's behavior and trauma were attributed to Jamie, as well as testimony about Ian's mental health issues and need for security, stability, and permanence.  OCS representatives testified that they were looking into a family placement for Ian with Jamie's aunt in Oklahoma, if and when Ian is discharged

from the foster home. Alternatively, OCS would try to find an adoptive placement for Ian. OCS did not seek to terminate Anna's parental rights to Ian, with the hope that she "might be able to parent [Ian] with enough wrap around supports, but if not she is instrumental in [Ian's] therapy and recovery."

The superior court found that Ian was a child in need of aid pursuant to AS 47.10.011(8) in part because of Jamie's conduct, and that Jamie had not timely remedied his conduct; he failed to comply with the family preservation program, his participation in services with that agency was "virtually nonexistent," and he had not remedied the conditions identified in 2006 (exposure to domestic violence) which traumatized Ian.

In September 2013 the superior court issued an order terminating Jamie's parental rights to Ian.[4] The court remarked that Jamie had missed the opportunity to help Ian after Ian was diagnosed with complex emotional trauma and possible PTSD; instead

> [Jamie] destroyed his relationship with [Ian] to such an extent that [Ian] wants nothing to do with his father and refuses to talk about him. It does not appear [Jamie] can remedy this situation in a reasonable time. . . . Moreover, [Jamie] has done very little on his current case plan. No reason exists to believe [Jamie] will remedy these conditions within a reasonable time, and [Ian] needs permanence.

The court found that OCS engaged in reasonable efforts to provide family support services, and that termination of Jamie's parental rights was in Ian's best interests. Jamie

---

[4] The court declined to terminate Jamie's parental rights to the other three children because OCS did not present sufficient evidence linking the mental injuries suffered by the other children to Jamie's conduct. Because the court did not terminate Jamie's parental rights to the other children, the court permitted Anna to withdraw her relinquishment of parental rights to them.

appeals, but he does not dispute that the evidence presented at trial supports the court's findings.

## III. STANDARD OF REVIEW

The superior court's determination that termination of parental rights is in a child's best interests is a factual finding that we review for clear error.[5] A finding is clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with a definite and firm conviction that the superior court was mistaken.[6] We decide de novo whether the superior court's findings satisfy the requirements of the child in need of aid statutes,[7] bearing in mind at all times that terminating parental rights is a drastic measure.[8]

## IV. DISCUSSION

The rights and responsibilities of a parent regarding a child may be terminated for purposes of freeing the child for adoption or other permanent placement.[9] Jamie argues that termination of his parental rights to Ian was improper because there was no specific permanency plan for Ian and no intention of terminating Anna's parental rights, even if Ian remains in therapeutic foster care. In support, Jamie cites *A.B. v. State,*

---

[5] *Judith R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 896, 900 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

[6] *Id.* (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[7] *Id.* (citing *Carl N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 102 P.3d 932, 935 (Alaska 2004)).

[8] *Christina J.*, 254 P.3d at 1104 (quotations and citation omitted).

[9] AS 47.10.088(a).

*Department of Health & Social Services*,[10] wherein we held that when circumstances create a risk of the child becoming a "half-orphan," thereby depriving the child of potential financial support and inheritance rights, the superior court must determine whether termination was for the purpose of freeing the child for adoption or other permanent placement and if not, then the court should decline to terminate parental rights.

OCS argues that Jamie did not raise this argument before the superior court and thus cannot raise it now. We disagree. We have previously held:

> Arguments are considered on appeal if raised explicitly in the superior court, or if the issue is "1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings," or if failure to address the issue would propagate "plain error."[11]

We conclude that Jamie preserved this issue for appeal when he asserted in his closing argument that termination of his parental rights was not in Ian's best interests because OCS had not identified any permanent placement.

It is permissible to terminate one parent's rights without legally changing the relationship of the children to the other parent, so long as the statutory requirements for termination are met and the superior court makes findings that the goal of terminating the parent's rights is to free the children for adoption or other permanent placement.[12]

---

[10]     7 P.3d 946, 954-55 (Alaska 2000).

[11]     *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 115 (Alaska 1990) (quoting *State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987)).

[12]     AS 47.10.088(h) ("The rights of one parent may be terminated without
(continued...)

While difficulty finding permanent placement because of a child's severe behavioral problems does not prevent termination,[13] a court may terminate parental rights only if it finds by a preponderance of the evidence that termination is in the child's best interests.[14]

Although OCS stated in its petition that termination of Jamie's parental rights was for the purpose of freeing Ian for a permanent placement, the location of that placement was unclear.[15] However, at the time of trial, Ian was not in Anna's care or custody, and his stay in the therapeutic foster home was indefinite. Therefore, *A.B.* does not apply — *A.B.* applies only if the child is still in the custody of the "non-offending" parent.[16] Moreover, it is unlikely that OCS ever will place Ian permanently with Anna,

---

[12](...continued)
affecting the rights of the other parent."); *see also K.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, Mem. Op. & J. No. 1034, 2001 WL 34818265, at *2 (Alaska July 18, 2001).

[13]     *See S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1124-25 (Alaska 2002); *see also Louise A. v. State, Div. of Family & Youth Servs.*, Mem. Op. & J. No. 1162, 2004 WL 541373, at *3 (Alaska Mar. 17, 2004) ("Freeing a child for the possibility of a permanent, stable home is sufficient; there need not actually be an adoptive home at the time of termination.").

[14]     Child in Need of Aid Rule 18(c)(3).

[15]     The issue is further complicated by the fact that the court did not terminate Jamie's parental rights to the other three children. Jamie argues that, since he still has parental rights to the younger three children, there are continued efforts to create stability in the home, and therefore, continued reunification efforts could result in further stabilization for all four children. Given Ian's unique disabilities and therapeutic needs, combined with Jamie's history of parenting Ian, we disagree.

[16]     *S.H.*, 42 P.3d at 1125 ("*A.B.* stands for the proposition that the risk of a child being 'half-orphaned' should be considered in the best interests analysis where
(continued...)

given her parenting history and Jamie's continuing co-parenting of the younger three children.

OCS presented substantial undisputed evidence that termination of Jamie's parental rights was needed to protect Ian from his father; Jamie was an unfit parent and caused serious harm to Ian, such that Ian's health and safety were at risk, while Anna's continued involvement could benefit Ian's therapeutic plan, and terminating her rights could be psychologically harmful to Ian.[17] Therefore the superior court did not clearly err in finding that termination of Jamie's parental rights was in Ian's best interests.

---

[16](...continued)
[OCS] seeks to terminate only one parent's rights *and the child will remain in the other parent's custody*." (emphasis added)); *see also Patience P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1417, 2102 WL 1232605, at *5 (Alaska Apr. 11, 2012) (stating that "[t]he decision in *A.B.* was subsequently limited to the specific facts of that case"); *cf. K.B.*, 2001 WL 34818265, at *2-3 (holding that, where permanency plan kept children in mother's physical custody, superior court did not abuse its discretion when it found that father's parental rights were terminated to free children for permanent placement and that termination was in children's best interests); *Victor B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1399, 2011 WL 6004329, at *3-7 (Alaska Nov. 30, 2011) (upholding superior court's finding that father failed to remedy domestic violence issues and that continued custody would not be in the children's best interests, and concluding that termination of father's parental rights freed children for permanent placement with mother).

[17]     *See K.B.*, 2001 WL 34818265, at *3 (upholding termination where superior court found that, where the children had lived in a "violent, frightening, dangerous, erratic environment" their entire lives, termination of the father's rights and permanent placement with mother would be an improvement that would serve the children's safety and, thus, was in their best interests).

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's judgment terminating Jamie's parental rights to Ian.