STATE of Alaska, Appellant,

v.

Robert A. BREEZE, Appellee.

Nos. A–4840, A–4848 and A–4849.

Court of Appeals of Alaska.

May 6, 1994.

Rehearing Denied May 25, 1994.

David C. Stewart, Law Office of Hickey and Stewart, Anchorage, for appellant.

Douglas Pope, Wagstaff, Pope & Katcher, Anchorage, for appellee.

Before COATS, J., ANDREWS, Superior Court Judge,* and WOLVERTON, District Court Judge.*

## OPINION

WOLVERTON, District Court Judge.

The issues presented in this appeal are whether, under the circumstances of this case, the State Attorney General had the authority to appoint a special prosecutor and, if so, whether the trial court was correct in dismissing indictments on the grounds that the Special Prosecutor had exceeded the scope of the authority granted by the Attorney General. The case presents issues of first impression in Alaska. We find that the Attorney General had the authority to appoint a special prosecutor in this instance and that the trial court erred both in finding that the Special Prosecutor had exceeded the scope of his appointment and in dismissing the indictments on that ground. We therefore vacate the trial court's order and reinstate the indictments.

## Background [1]

On January 25, 1990, the law firm of Boyko, Breeze and Flansburg filed a lawsuit on its own behalf against Hazama–Gumi, Ltd., a Japanese firm that had sought a contract to finance and build a major part of the Bradley Lake hydroelectric project. In that suit, 3AN–90–718CI, Attorney Robert A. Breeze claimed that he had been working on a $500,-000 contingency fee basis for Hazama, which was to be paid if the firm won a no-bid contract for the project. Although Hazama dropped out of the process when the state rejected its financing plan and decided to use competitive bidding, Breeze claimed that Hazama later agreed to pay him for services, and he submitted an itemized breakdown of services and expenses in excess of $200,000. The suit also demanded repayment of $50,000 for various political contributions made on behalf of Hazama.

The civil suit against Hazama–Gumi attracted prosecutorial attention to potential violations of lobbying without registration and lobbying under an improper contingency fee arrangement. By November of 1990, the Chief Prosecutor for the Department of Law had commenced an inquiry into the matter.

However, in early November of 1990, Walter J. Hickel was elected Governor and shortly thereafter on December 11, 1990, he announced the appointment of Charles E. Cole as his attorney general. Edgar Paul

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The background is essentially not in dispute and is drawn largely from an affidavit submitted by Breeze's counsel as an offer of proof, and from the statement of facts that Breeze submitted in briefing to the trial court. Both the affidavit and statement of facts referenced several letters, newspaper articles, and contract documents.

Boyko, a partner in the firm under investigation, had been involved in Hickel's gubernatorial campaign, and after the election he was named to the Governor's Department of Law transition team. It was Boyko, in fact, who recommended to Hickel that he appoint Cole as attorney general.

The relationships among Governor Hickel, Boyko, and Cole were significantly intertwined. Boyko had served as attorney general in Hickel's first administration in the 1960s. During the 1970s and 1980s, Cole and Boyko were private practitioners and had represented one another in litigation where the other had been named as a party. Further, Cole and Boyko had jointly represented several different clients, and Cole had represented Hickel while in private practice.

On December 6, 1990, Boyko apparently asked Governor Hickel to appoint a special prosecutor to expedite the criminal investigation involving his law firm. Boyko expressed his belief that the investigation was a politically motivated attempt to reduce his influence with the new administration and to deflect attention from his complaints about the prior administration's selection of a private law firm to litigate the Exxon Valdez claims on behalf of the state.

Three attempts were made to secure the services of a special prosecutor. Although Cole had tried to remove himself from the selection process to some degree by assigning the selection duties to his deputy, he stepped in and rejected the first candidate because the candidate had been a law partner of the prior administration's attorney general.[2] After the second and third candidates indicated that they had conflicts that prohibited them from taking the position, Breeze himself indicated that he wanted the state to get the investigation underway.

At the outset of the special counsel selection process, the Deputy Attorney General submitted a Request for Alternate Procurement, which was marked "confidential." In that document he stated that

> this case involves investigation of individuals previously represented by both the Attorney General and the law firm with which the Deputy Attorney General was associated until his employment with the Department of Law. Because of the inherent conflict of representation, the use of a special prosecutor has been deemed to be necessary. Due to the confidential nature of *all* criminal investigations, the department must limit its contacts with prospective outside counsel to an absolute minimum in order to protect the constitutional rights of the individuals involved in the matter under investigation. As such, the use of *any* form of open competitive procurement is impractical and contrary to the public interest.

The selection process ultimately resulted in the appointment of Anchorage attorney

2. Attorney General Cole later set forth his recollection of the selection process in an affidavit, which states, in part, as follows:

I, Charles E. Cole, being first duly sworn, do hereby testify and state as follows:

1. I am currently attorney general for the State of Alaska, a position I have held since December, 1990.

2. Sometime in 1991—I believe in the spring—Edgar Paul Boyko, then a law partner with Robert Breeze, told me that he believed an investigation being conducted by the Department of Law into possible criminal actions of Mr. Breeze was motivated by criticisms which he, Edgar Paul Boyko, had made against the Department of Law concerning its selection of law firms to prosecute on behalf of the State the Exxon Valdez claims.

3. I assured Mr. Boyko that that was certainly not the case so far as I knew, that former Attorney General Doug Baily had told me about this investigation shortly after I was appointed Attorney General, and that so far as I was aware, the investigation had nothing to do with the criticisms of Mr. Boyko about the Department of Law.

4. On the other hand, I told Mr. Boyko that I wanted to be certain that the investigation being conducted by the Department of Law was impartial, and not motivated by Mr. Boyko's criticisms of the Department of Law, so I would appoint special counsel to conduct the investigation and to prosecute violations of criminal law which might develop from the investigation.

5. Initially I said that because of my personal and professional associations with Mr. Boyko, and to avoid possible public criticism that the selection by me of the special counsel was motivated by improper considerations, I would commit the selection of independent counsel to the Deputy Attorney General.

David Stewart as Special Counsel.[3] In his appointment letter dated April 15, 1991, Attorney General Cole advised Stewart that

> This letter constitutes your appointment as Special Counsel to act on behalf of the State of Alaska to investigate whether any violations of law may have occurred in connection with the matters mentioned in the complaint filed in 3AN–S90–718 Civil, a civil case filed by Boyko, Breeze, & Flansburg, *et. al.*, to collect fees allegedly owed for services rendered to Hazama–Gumi, Ltd., and to investigate such other related matters as may arise in the course of your investigation.
>
> As Special Counsel, acting in an independent capacity and exercising your independent judgment, you are to direct all phases of the investigation, the filing of any charges you conclude from your investigation are warranted, and the prosecution of any such charges to their conclusion. You are also authorized, but are not required, to request the services of the Alaska State Troopers to assist you in the conduct of your investigation, and to retain such other attorneys and special services as you find warranted.
>
> Enclosed are three copies of a State of Alaska Professional Services Contract for your signature setting forth and describing the terms and conditions embodied in this letter of appointment. Please sign and return two copies to the Department of Law.

The standard agreement form for professional services included, *inter alia*, the following provisions:

> Article 5. Termination. The project director, by written notice, may terminate this contract, in whole or in part, when it is in the best interest of the State. The State is liable only for payment in accordance with the payment provisions of this contract for services rendered before the effective date of termination.
>
> . . . .
>
> Article 7. No Additional Work or Material. No claim for additional services, not specifically provided in this contract, performed or furnished by the contractor, will be allowed, nor may the contractor do any work or furnish any material not covered by the contract unless the work or material is ordered in writing by the Project Director and approved by the Agency Head.
>
> Article 8. Independent Contractor. The contractor and any agents and employees of the contractor act in an independent capacity and are not officers or employees or agents of the State in the performance of this contract.
>
> . . . .
>
> Article 13. Officials Not to Benefit. Contractor must comply with all applicable federal or State laws regulating ethical conduct of public officers and employees.[4]

Special Prosecutor Stewart directed the investigation and presented the matter be-

---

**3.** In a continuing paragraph to the affidavit quoted in n. 2, *supra*, Attorney General Cole explained how the selection process finally resulted in the selection of Stewart as Special Prosecutor:

> 6. The initial nomination of independent counsel by the Deputy Attorney General, when it came to my attention, was—in my view—subject to possible criticism because either the independent counsel or the law firms with which he was associated had significant financial relationships with the Department of Law and therefore could be viewed as less than impartial. Another designation of special counsel was made, but the designee declined to act because of a perceived conflict of interest. Therefore, I elected to make the selection of the independent prosecutor myself and I eventually did select David Stewart because I viewed him as wholly impartial and competent to conduct the investigations and to pursue

whatever criminal prosecutions he concluded were warranted.

**4.** An appendix to the standard agreement form included the following typed provision:

> Article 1. *The Services to be performed by the Contractor*
> Article 1.1 The Contractor, in the person of David C. Stewart, shall serve as Special Counsel on behalf of the State of Alaska in connection with the investigation relating to the complaint in 3AN–90–718 CI, a civil case filed to collect fees for services from Hazama–Gumi, Ltd., and to other matters that may arise in the course of the investigation. The scope of Contractor's authority and services as Special Counsel are set out in the attached letter of appointment dated April 15, 1991, and incorporated by reference herein.

fore a grand jury, which indicted Breeze on various charges in three separate cases.[5] Breeze entered pleas of not guilty to all of the charges, and he moved to dismiss the indictments on two grounds: that the Attorney General had no authority to appoint a special prosecutor, and that the Special Prosecutor had exceeded the scope of his authority. Breeze also alleged that the Attorney General's declaration of a conflict was merely a ruse to deflect the investigation from others and limit it to Breeze only; on the other hand, Breeze argued that if the Attorney General had a conflict, the conflict should have prohibited him from selecting a special prosecutor.

Breeze moved to depose a number of government officials, and the state moved to quash the subpoenas. The trial court quashed some of the subpoenas, held the subpoenas for Governor Hickel and the Lt. Governor in abeyance, and ordered Cole, Deputy Attorney General Blankenship, and Boyko to appear for an evidentiary hearing. The trial court then stayed its order pending appellate review. After this court denied the state's petition for review, the Alaska Supreme Court granted review and stayed the evidentiary hearing

> pending a determination by the superior court of whether the attorney general has the authority to appoint a special prosecutor, and if so, the circumstances under which such authority may be exercised. If, after these questions are determined, an evidentiary hearing is necessary to facilitate the disclosure of relevant information, such a hearing should be held.

Rather than reach the issue of whether and under what circumstances the attorney general has the authority to appoint a special prosecutor, the trial court chose to resolve the question by ruling only on what it viewed as the "narrowest issue raised" and dismissed the indictments on its finding that the

Special Prosecutor had "exceeded the scope of the authority vested in him by the appointment letter."

Following the trial court's order, the state moved for reconsideration and submitted a letter from the Attorney General, which read as follows:

> I have reviewed my letter of April 15, 1991 appointing David Stewart Special Counsel to investigate the Breeze matter. I have also reviewed the decision of Judge Katz distributed on February 1, 1993 that interpreted that appointment.

> Mr. Stewart's performance under that appointment resulted in three indictments being returned against Mr. Breeze. His investigation and assistance to the grand jury in the return of those indictments is within the scope of Mr. Stewart's authority that I intended him to have when I appointed him to be Special Counsel on April 15, 1991.

The trial court denied the state's motion for reconsideration, and the state appealed.

*The Attorney General's Authority to Appoint a Special Prosecutor*

██ Although the trial court chose not to reach the issue, we believe that it is appropriate for us to resolve whether the attorney general has the authority to appoint a special prosecutor. The issue was fully briefed and argued before the trial court and in this appeal. *Sea Lion Corp. v. Air Logistics of Alaska,* 787 P.2d 109, 115 (Alaska 1990); *State v. Northwestern Construction, Inc.,* 741 P.2d 235, 239 (Alaska 1987). Further, while we will reverse a trial court's factual determinations only if clearly erroneous, questions that involve application of legal rules to the facts are subject to our independent judgment. *Jones v. Jones,* 835 P.2d 1173, 1175 (Alaska 1992). As to questions of law, we are

---

5. Three indictments were returned by the grand jury against Attorney Robert Breeze, charging him as follows. In case 3AN–S91–5935CR, he was charged with two counts of securities violations, AS 45.55.210, two counts of theft in the first degree, AS 11.46.120, a count of scheming to defraud, AS 11.46.600(a)(2), two counts of misapplication of property, AS 11.46.620(a), and a count of forgery in the first degree, AS 11.46.-

500(a)(1). In case 3AN–S91–6507CR, he was charged with a count of misapplication of property, AS 11.46.620(a) and a count of scheming to defraud, AS 11.46.620(a)(2). In case 3AN–S91–7934CR, Breeze was charged with a count of theft in the first degree, AS 11.46.120, a count of scheming to defraud, AS 11.46.600(a)(2) and a count of misapplication of property, AS 11.46.-620(a).

to adopt the rule of law that is most persuasive in light of precedent, reason, and policy. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

■ Alaska Statute 44.23.020 sets forth the duties of the attorney general and states, in part, that

(a) The attorney general is the legal advisor of the governor and other state officers.

(b) The attorney general shall

. . . .

(3) prosecute all cases involving violation of state law, and file informations and prosecute all offenses against the revenue laws and other state laws where there is no other provision for their prosecution;

. . . .

(7) perform all other duties required by law or which usually pertain to the office of attorney general in a state[.]

In the case before us, no claim has been made that the offenses alleged in the indictments were improperly brought or involved prohibited subjects of prosecution under AS 44.23.020(b)(3). However, the record before us demonstrates that the Attorney General reasonably believed that he was ethically restrained from prosecuting the matter because, as the Deputy Attorney General stated in his Request for Alternate Procurement, "this case involves investigation of individuals previously represented by both the Attorney General and the law firm with which the Deputy Attorney General was associated until his employment with the Department of Law. Because of the inherent conflict of representation, the use of a special prosecutor has been deemed to be necessary."

Additionally, in a confidential document captioned "AUTHORITY TO SEEK PROFESSIONAL SERVICES" the Deputy Attorney General stated that due to "the inherent conflict of representation involved in such a situation, it has been determined that the use of a special prosecutor is necessary in order to maintain public confidence in the judicial process and to assure that the conduct of any resulting prosecution is done without bias or any appearance of impropriety."

Despite the Attorney General's belief that a conflict existed, however, we find that the Attorney General had a continuing obligation to ensure that all violations of law would be prosecuted as required under AS 44.23.020(b)(3). As a result, we find that the appointment of a special prosecutor by the Attorney General as a remedy to his perceived conflict was both appropriate and authorized under AS 44.23.020(b)(7). Prosecution of the alleged violations was a duty required by law (AS 44.23.020(b)(3)), and if the Attorney General in his discretion chose to disqualify himself and the Department of Law from prosecuting the violations, it logically follows that his appointment of a special prosecutor to conduct the prosecution was also a duty required by law.[6]

■ Breeze argues that the Attorney General did not have the authority to appoint a special prosecutor because such delegations of power are limited by the Alaska Constitution, by statute, and by the common law doctrine of *delegatus no potest delgare* (absent consent of the principal, delegated power may not be delegated further). According to Breeze, article III, section 22 of the Alaska Constitution limited "all . . . respective

---

**6.** A contrary application of AS 44.23.020(b)(3) and (b)(7) would lead to an illogical result: if an attorney general who is disqualified from prosecuting a particular case were also unable to appoint a special prosecutor, a case that would otherwise be appropriate for investigation and possible prosecution would not be subject to any prosecution. The attorney general in such a situation would be left with the untenable choice of (1) violating the duty specifically imposed by AS 44.23.020(b)(3) by not prosecuting a violation of state law (and possibly being faulted for not pursuing prosecution because of a prior association with the accused), or (2) prosecuting the individual with the risk of being charged with an unethical conflict of interest.

A fair reading of AS 44.23.020 does not require placing an attorney general in such an untenable dilemma: the attorney general is obligated under the statute to investigate and prosecute law violations, and if the attorney general and Department of Law are disqualified from doing so, the attorney general is nevertheless "required by law" to ensure that the investigation and prosecution are conducted by someone who is qualified, whether that person is denominated as special counsel, special prosecutor, or by some other title.

functions, powers and duties" of the attorney general to those "allocated by law,"[7] and that the allocation under law is confined by AS 44.17.010 and AS 44.17.040, which somehow limits or restricts the attorney general from appointing a special prosecutor. However, we do not believe that the Alaska Constitution or the applicable statutes express or imply such a restriction on the attorney general's authority to properly delegate certain duties of the office.

Alaska Statute 44.17.010 states that the attorney general "may assign the functions vested in the department to subordinate officers and employees." Alaska Statute 44.17.040 authorizes the attorney general to "establish necessary subordinate positions, make appointments to these positions, and remove persons appointed within the limitations of appropriations and subject to state personnel laws. Each person appointed to a subordinate position established by the [attorney general] is under the supervision, direction, and control of the [attorney general]."

It is apparent the key concern is, that in delegating functions and establishing staff positions, the attorney general is to maintain appropriate supervision, direction, and control over individuals serving in positions that are *subordinate* to the attorney general. Under the circumstances of this case, the Attorney General perceived a disqualifying interest, but he nevertheless maintained appropriate supervision, direction and control over the Special Prosecutor to whom he had appropriately delegated functions.

As previously stated, the attorney general has the power and duty under AS 44.23.020(b)(3) and (b)(7) to ensure that state law violations are investigated and prosecuted. The Attorney General fulfilled this legal obligation by appointing a special prosecutor who, while operating in an ethically required, independent capacity, nevertheless remained subordinate to the Attorney General.

7. Article III, section 22 of the Alaska Constitution reads as follows:

 **Executive Branch.** All executive and administrative offices, departments, and agencies of the state government and their respective functions, powers, and duties shall be allocated by

The Attorney General hired the Special Prosecutor after directing the selection process to the extent necessary to ensure that the person selected would not also be disqualified by a conflict of interest. The Attorney General directed the Special Prosecutor to act "in an independent capacity," and he directed him to exercise his "independent judgment" subject, of course, to the requirement that he "comply with all applicable federal or state laws regulating ethical conduct of officers and employees," (as set forth in Article 13 of the Standard Agreement form for Professional Services).

While acting independently, however, the Special Prosecutor was required to submit claims for services to the Department of Law which were subject to the approval of the Attorney General (Article 7, Professional Services Agreement), and which made his work subject to some degree of review. Additionally, the Special Prosecutor was subject to termination by the Attorney General at any time that the Attorney General perceived it to be in the best interest of the state (Article 5, Professional Services Agreement). Thus, the Special Prosecutor remained in a position subordinate to the Attorney General, as required by AS 44.17.010 and AS 44.17.040. We therefore conclude that the trial court was clearly erroneous in its factual finding that the Special Prosecutor was not under appropriate and continuing supervision of the Attorney General.

Further support for the proposition that the Alaska Constitution and statutes were not meant to serve as restrictive limits to the attorney general's authority to delegate is found in the Proceedings of the Alaska Constitutional Convention. The Chairperson of the Executive Committee commented that

> in keeping with the modern thinking of a strong executive, it is certainly the policy not to establish offices by name and to narrow down their functions in the constitution. The policy is to leave [ ] them

law among and within not more than twenty principal departments, so as to group them as far as practicable according to major purposes. Regulatory, quasi-judicial, and temporary agencies may be established by law and need not be allocated within a principal department.

broad and general and flexible enough so they can be adjusted to meet changing times and changing circumstances.

3 Proceedings of the Alaska Constitutional Convention (PACC) 2008 (January 13, 1956).

■ A reading of the statutory authorization for other Department of Law operations suggests an intent to leave offices and their functions broad, general, and flexible, even when circumstances do not involve a disqualification of the attorney general. For example, AS 44.23.050 provides that

> If a matter in which the state is interested is pending in a court distant from the capital, and it is necessary for the state to be represented by counsel, the attorney general, with the approval of the governor, may engage one or more attorneys to appear for the attorney general. The attorney general may pay for these services out of appropriations for the attorney general's office.

Additionally, the fact that the legislature provided a mechanism in AS 36.30.015 for state agencies to procure personal services contracts demonstrates that the legislature contemplated retention of the services of counsel outside of the Department of Law.[8]

In *Public Defender Agency v. Superior Court, Third Judicial Dist.*, 534 P.2d 947, 950 (Alaska 1975), the Alaska Supreme Court explained that "[g]enerally, an attorney general has those powers which existed at common law except where they are limited by statute or conferred upon some other state official." In describing the breadth of this authority, the supreme court went on to state that

> Under the common law, an attorney general is empowered to bring any action which he thinks necessary to protect the public interest, and he possesses the corollary power to make any disposition of the state's litigation which he thinks best. This discretionary control over the legal business of the state, both civil and crimi-

nal, includes the initiation, prosecution and disposition of cases.

*Id.* (citations omitted).

In *Florida ex rel Shevin v. Exxon Corp.*, 526 F.2d 266, 268 (5th Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976), the court discussed the evolution of the office of the common law attorney general, and explained that as chief legal representative of the king, the

> attorney general was clearly subject to the wishes of the crown, but, even in those times, the office was also a repository of power and discretion; the volume and variety of legal matters involving the crown and the public interest made such limited independence a practical necessity. Transposition of the institution to this country, where governmental initiative was diffused among the officers of the executive branch and the many individuals comprising the legislative branch, could only broaden this area of the attorney general's discretion.

(Footnotes omitted).

Elaborating on the same point made by the Alaska Supreme Court in *Public Defender Agency*, the court in *Shevin* went on to explain that

> The attorneys general of our states have enjoyed a significant degree of autonomy. Their duties and powers typically are not exhaustively defined by either constitution or statute but include all those exercised at common law. There is and has been no doubt that the legislature may deprive the attorney general of specific powers; but in the absence of such legislative action, he typically may exercise all such authority as the public interest requires. And the attorney general has wide discretion in making determination as to the public interest.

*Id.* (footnotes omitted).

As previously stated, neither the Alaska Constitution nor the legislation establishing

---

8. AS 36.30.850(b)(32) now provides that the procurement code does not apply to

> contracts that are between the Department of Law and attorneys who are not employed by the state and that are for the review or prosecution of possible violations of the criminal

law of the state in situations where the attorney general concludes that an actual or potential conflict of interest makes it inappropriate for the Department of Law to review or prosecute the possible violations.

the Department of Law limits or deprives the attorney general of the power to appoint a special prosecutor when, in the wide discretion granted, the attorney general believes such an appointment to be in the public interest. We hold that the proper appointment of a special prosecutor in circumstances where the attorney general believes he and the Department of Law are disqualified by a conflict of interest is within the attorney general's discretionary control over the legal business of the state.

■ With respect to the argument that the appointment was somehow barred by the common law doctrine of *delegatus non potest delegare*, we are unable to find from the record and applicable law that the Attorney General did not have the consent of the principal to make a proper delegation to a special prosecutor.

*The Scope of the Special Prosecutor's Authority*

■ Although we have concluded that the trial court erred in its factual finding that the Special Prosecutor was not under the continuing supervision of the Attorney General, we nevertheless must address the trial court's legal conclusion that the Special Prosecutor exceeded the scope of his authority. In reaching this conclusion, the trial court apparently relied upon the argument made by Breeze that *Schumer v. Holtzman,* 60 N.Y.2d 46, 467 N.Y.S.2d 182, 454 N.E.2d 522 (1983) was controlling. We find that *Schumer* is distinguishable on several grounds, and that the trial court therefore erred in its legal conclusion as well.

*Schumer,* in fact, serves to highlight the difference between jurisdictions that have express constitutional or statutory limitations

on the attorney general's authority to appoint a special prosecutor, and those that do not. In *Schumer,* the New York Court of Appeals upheld the lower court's decision that the district attorney had improperly appointed a special prosecutor to investigate and prosecute an individual whom the district attorney, Holtzman, had run against for a congressional seat. *Schumer,* 467 N.Y.S.2d at 183–84, 454 N.E.2d at 523.

In contrast to the Alaska attorney general who functions with the broad powers and duties as explained in *Public Defender Agency,* the district attorneys in New York "do not hold a common law office; and they have no powers but such as can be found written in the statute book." *People v. Corning,* 2 N.Y. 9, 18 (1849).

The district attorney in *Schumer* was an elected constitutional officer who was directed by statute to prosecute crimes that were recognized by the courts in the county for which she had been elected to serve. *Schumer,* 467 N.Y.S.2d at 183–84, 454 N.E.2d at 523–24 (citing County Law § 700(1), McKinney's Consolidated Laws of New York (MCL)). County Law § 930 authorized the district attorney to appoint assistant district attorneys to serve at the pleasure of the district attorney. *Id.* 467 N.Y.S.2d at 184, 454 N.E.2d at 524. However, unlike in Alaska, the New York county laws included a specific statutory scheme for the appointment of a special prosecutor. In the event that the district attorney were to become disabled or disqualified, the statutory scheme provided for court appointment of a special district attorney who would supersede the district attorney. *Id.* (citing County Law § 701). Further, under subdivision 2 of section 63 of the Executive Law [9] the governor

9. Executive Law § 63 sets forth the general duties of the New York Attorney General, who is also an elected constitutional officer under Article 5 § 1; section 63 reads as follows:

**General duties**

The attorney-general shall:

1. Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state. . . .

2. Whenever required by the governor, attend in person, or by one of his deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or

of New York has the power to order the attorney general to supersede a district attorney.

Schumer was elected to a congressional seat formerly held by Holtzman. *Id.* 467 N.Y.S.2d at 183–84, 454 N.E.2d at 523. After the United States Attorney investigated the Schumer campaign for possible violations and declined prosecution, Holtzman, who by then was elected as county district attorney, decided to pursue the matter. However, because she was concerned about charges of bias, she asked the governor of New York to order the attorney general to supersede her. *Id.*

After the governor refused her request, the district attorney apparently did not seek court appointment of a special prosecutor under § 701, but instead chose to bypass that provision by appointing a special prosecutor under § 930. *Id.* The terms of this appointment provided that the special prosecutor's decisions or actions would not be overridden by the district attorney, and that he could be removed from his duties only for disability or for "extraordinary impropriety," as opposed to removal at the pleasure of the district attorney as set forth in § 930. *Id.* 467 N.Y.S.2d at 184, 454 N.E.2d at 524. The court found this appointment to be invalid because "[s]uch a transfer may be accomplished only by executive or court order." *Id.* 467 N.Y.S.2d at 185, 454 N.E.2d at 525.

In Alaska, by contrast, there are no similar constitutional or statutory limitations regarding appointments of special prosecutors, and, as previously discussed, the Special Prosecutor appointed to investigate Breeze remained appropriately subordinate to the Attorney General.

The fact that the Special Prosecutor appointed to investigate Breeze remained subordinate to the Attorney General leads to our conclusion that the trial court erred in dismissing the indictments on the grounds that the Special Prosecutor somehow exceeded the scope of his authority. First, we believe the trial court erred in adopting such a re-

strictive interpretation of the phrase from the Special Prosecutor's appointment letter that authorized him "to investigate such other related matters as may arise in the course of your investigation."

Because the authority for the appointment was derived from AS 44.23.020(b)(3), which required prosecution of "all cases involving state law," the term "related matters" could as well be interpreted to include all law violations by individuals under investigation. This is particularly true when the appointment letter is read together with the appendix to the standard agreement form entitled "Article I. *The Services to be performed by the Contractor.*" Under Article I, Special Counsel was to investigate not only matters "in connection with the investigation relating to the complaint in 3AN–90–718CI, a civil case filed to collect fees for services from Hazama–Gumi, Ltd.," but he was more broadly authorized to serve as Special Counsel in "other matters that may arise in the course of the investigation...."

■ Certainly the Attorney General, who was privy to the agreement that contracted the services of the Special Prosecutor and who authored the appointment letter, would have had some standing to challenge the Special Prosecutor for exceeding his authority; however, the Attorney General made it clear that the Special Prosecutor had acted within the scope of the authority intended. We find no basis to assume that Breeze had the same standing to challenge whether the Special Prosecutor exceeded the scope of his appointment.

■ Even if the Special Prosecutor were found to have technically exceeded the scope of his appointment, absent a showing of prejudice by Breeze, the indictments would remain valid pursuant to the Special Prosecutor's authority as a *de facto* officer. *See People v. Davis,* 86 Mich.App. 514, 272 N.W.2d 707, 710 (1979).

In *Davis,* the county prosecuting attorney petitioned the court pursuant to statute for

proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending.

N.Y.Executive Law § 63 (McKinney 1993).

appointment of a special prosecutor due to a conflict of interest he perceived regarding the close working relationship between his office and the sheriff's department whose deputy was the subject of investigation. The court appointed a special prosecutor who conducted an investigation and authorized issuance of warrants that charged the defendant with embezzlement and fraudulent conversion. *Id.* 272 N.W.2d at 708. The lower court later determined that because the circuit court was without authority to appoint a special prosecutor to appear in district court, it was necessary not only to set aside the appointment but also to dismiss the warrants. *Id.* at 709–10.

The appellate court agreed that the circuit court did not have the power to appoint a special prosecutor for the purposes requested. However, the appellate court held that the lower court erred in dismissing the warrants that were issued by the special prosecutor, relying on the *de facto* doctrine, which validates, on grounds of public policy and prevention of failure of public justice, the acts of officials who function under color of law. *Id.* at 710. The court in *Davis* quoted from 46 C.J. Officers, § 366 p. 1053, which read as follows:

> A person will be held to be a de facto officer when, and only when, he is in possession, and is exercising the duties, of an office; his incumbency is illegal in some respect; he has at least a fair color of right or title to the office, or has acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment or election, and induce people, without inquiry, and relying on the supposition that he is the officer he assumes to be, to submit to or invoke his action; and, in some, although not all, jurisdictions, only when the office has a de jure existence.

We believe that the *de facto* doctrine is applicable under the circumstances, and that it requires reinstatement of the indictments against Breeze. The Special Prosecutor was investigating and prosecuting Breeze pursuant to the authority of the Attorney General, derived from AS 44.23.020 and vested in him by his appointment.

Although we have found that the appointment and exercise of authority were proper, the result would be the same even if the trial court were correct that the incumbency was illegal in some respect; the Special Prosecutor had "at least a fair color or right of title," and "acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment." *Davis,* 272 N.W.2d at 710.

The process of appointing a special prosecutor was reported publicly and conducted at the request of Boyko, Breeze's law partner at the time. After Boyko made this request to the Governor, the Attorney General, as chief legal advisor to the Governor, commenced the selection process. When difficulties arose in selecting a qualified person, Breeze himself discussed the selection process and urged the state to get on with the investigation. Thus, the Special Prosecutor had a fair color or right to title, and he acted under circumstances of reputation or acquiescence not only of public authorities and the public, but also by Breeze himself. The Special Prosecutor conducted an investigation, submitted regular reports to the Attorney General, and presented the matters to a grand jury under circumstances that induced people to submit to or invoke his action.

Questions regarding the Special Prosecutor's authority had no demonstrated bearing on the grand jury's determination to return indictments against Breeze. Even if the Special Prosecutor's incumbency were illegal in some respect, there was no basis for the dismissal of the indictments, since, in any case, his acts achieved *de facto* legitimacy. *See People v. Montoya,* 44 Colo.App. 234, 616 P.2d 156, 162 (1980). There is nothing in the record to show how Breeze could have been prejudiced by the appointment of a special prosecutor who was contractually bound by "all applicable federal or state laws regulating ethical conduct of public officers," and who presented the cases to a grand jury for review.

In summary, we find that the Attorney General had the authority to appoint the Special Prosecutor under the circumstances of this case. We also find that the Special Prosecutor acted within the scope of his authority.[10] Finally, we hold that the Special Prosecutor acted at least with *de facto* authority and that, absent any record demonstrating resulting prejudice, there was no basis for dismissal of the indictments. The order of the trial court is therefore VACATED, and the indictments are reinstated.

BRYNER, C.J., and MANNHEIMER, J., not participating.

**10.** In light of the Attorney General's subsequent clarification regarding the Special Prosecutor's scope of authority, it is apparent that the Special Prosecutor would not now be prohibited from further prosecuting these matters in any event.